# Lambert *v.* Newman *et al.*

### Bill in Equity to enforce Vendor's Lien on Land.

1. *Burden of proof as to notice.*—If the vendor conveys by absolute deed, reciting therein that the purchase-money has been paid, the *onus* is on him, or his assignee of the note given for the purchase-money, when seeking to enforce a lien on the land, as against a sub-purchaser for valuable consideration, to prove notice of the fact that the original purchase-money was unpaid, before the consummation of the contract of sub-purchase; and proof of conversations or declarations, repeated after the lapse of fourteen or fifteen years, and not shown to be connected with any circumstances likely to impress them on the memory, is not sufficient to outweigh the positive testimony of the sub-purchaser himself, denying notice.

APPEAL from the Chancery Court of Coosa.

Heard before the Hon. R. F. LIGON, as special chancellor, selected by the parties on account of the incompetency of Hon. N. S. GRAHAM, who had been of counsel in the cause.

The original bill in this cause was filed on the 12th May, 1873, by John M. Lambert, against Richard T. Newman, Geo. W. Pearson, J. O. Thomas, A. T. Kannady, and William Lindsay; but the name of Lindsay was afterwards struck out by amendment, and Kannady's administrator was made a party in his stead, he being dead at the commencement of the suit. The object of the bill was to enforce a vendor's lien on a certain tract of land, which was in the possession of said R. T. Newman, and subject it to the payment of a note given for a part of the purchase-money. The land had belonged to Samuel Lambert, who was the father of the com-

plainant, and who, in November, 1855, sold and conveyed it to said A. T. Kannady, and put him in possession. Kannady paid a part of the purchase-money, and for the residue gave his promissory note for $1,100, dated the 15th November, 1855, and payable in cotton, at eight cents per pound, on the 1st January, 1858, reciting on its face that it was given for the purchase-money of the land. This note was transferred by said Samuel Lambert, by written assignment, dated the 10th May, 1857, to the complainant in this suit; and being unpaid at maturity, the complainant brought suit on it, in the Circuit Court of Coosa, and obtained a judgment for $1426.16 on the 14th September, 1859; which judgment was affirmed by this court on appeal, at its June term, 1860, as shown by the report of the case in 37 Ala. 57. Afterwards, in January, 1861, Kannady transferred to the complainant, on account of this judgment, two notes on William Lindsay, for $750 each, due the 25th December, 1861. The bill alleged that the complainant, acting through said Samuel Lambert as his agent, refused to accept these notes on Lindsay, "unless said Kannady would indorse the land upon said notes, in order to secure the purchase-money of said lands for which said judgment was rendered;" that Kannady agreed to do this, and pretended that he had done so, but, taking advantage of the age and infirmities of said Samuel Lambert, who was very old, almost blind, and illiterate, he wrote on one of the notes an indorsement that it was taken as part payment for the land, and made no indorsement on the other. The complainant obtained a judgment against Lindsay on these notes, in 1867, which was afterwards set aside, in 1868, on the ground that they were given for the purchase-money of slaves; and the bill alleged that Lindsay was insolvent at the time of his death, and that nothing could at any time have been collected on his said notes except Confederate money.

On the 29th August, 1860, Kannady sold and conveyed the land to G. W. Pearson, and put him in possession; and on the 17th January, 1861, Pearson sold and conveyed to J. O. Thomas, who had acted as his agent in making the purchase from Kannady. Thomas paid the agreed purchase-money to Pearson, and continued in possession of the land until some. time in 1868, when he sold to R. T. Newman, putting him in possession, and executing to him a bond for titles. The bill alleged that Kannady's note, and the unsatisfied judgment recovered on it, were a lien on the land, and that Pearson, Thomas, and Newman, each, had notice of the fact that the purchase-money had never been paid by Kannady, before the consummation of their respective purchases. Each of

said defendants, by way of plea as well as answer, denied notice, and claimed to be entitled to protection as innocent purchasers for valuable consideration.

On final hearing, on pleadings and proof, the chancellor sustained the defense set up by the respondents, and dismissed the bill; delivering the following opinion:

"The complainants insist, that the several respondents had, before their respective purchases of the land, 'constructive notice' that the purchase-money had not been paid by Kannady; and to establish this, they rely on the pendency of the suit of *John M. Lambert v. A. T. Kannady*, in the Circuit Court of Coosa, on the note given by Kannady for a part of the purchase-money; a transcript of which judgment is in evidence. *Lis pendens* is notice to all the world. But does the rule apply in this case? Does the institution of a suit in the Circuit Court, not involving the land or the title, operate as constructive notice to Thomas, or any of the subvendees of Kannady? This rule, in its origin in England, was confined to actions for the recovery of real estate only; and it had no place in equity jurisprudence, until Lord Bacon, in after years, introduced it with restrictions. The only case in this State, in which *lis pendens* was held to be applicable to any but real property, is that of *Bolling v. Carter* (9 Ala. 923), in which it was assumed to apply to a mortgage of a slave. The cases of *Harris v. Carter* (3 Stew. 323), and *Carter v. P. & M. Bank* (22 Ala. 743), decide that the pendency of a suit, involving the title to an estate, is sufficient notice to affect a purchaser. The suit must affect the estate, and not merely money secured on it. It must act directly, and not collaterally; such as proceedings *in rem*, which are notice to all the world. The judgment set up in this case is not a proceeding *in rem*, but a personal judgment: it was not a proceeding involving the land, or the title to the land, but a plain action of *assumpsit* on a promissory note, the consideration of which is not even set out in the complaint. But, if the note had been declared on *in hæc verba*, it would not have changed the rule. It is clear, to my mind, that none of the respondents are chargeable with *constructive* notice.

"The only remaining question is, whether they had actual notice of this unpaid purchase-money, before the purchase of the land and the payment of the money. In cases of this character, the *onus* is on the complainant: he must show a preponderance to prove this fact—that the respondents are not *bona fide* purchasers for valuable consideration without notice.—*Gordon v. Jones*, 42 Ala. 147. A person affected by notice, has the benefit of the want of notice by intermediate parties; and a purchaser with notice, from a purchaser with-

out notice, may shelter himself under the first purchase. Story's Eq. Pl. § 808; *Horton v. Smith*, 10 Ala. 73, and cases cited. Let us apply these principles of law to the case under consideration. To prove actual notice, or 'such circumstances as would cause a prudent man to make further inquiry before completing his purchase,' the complainant must rely on the testimony of Samuel Lambert, John M. Lambert, and Allen Lambert. Benjamin Newman proves nothing, except general notoriety in the neighborhood. Emanuel Pate speaks of a conversation between J. O. Thomas and Geo. W. Pearson, in the fall of 1861, in reference to said land; when Thomas said, 'The land was all paid for except those Lindsay notes, and Lindsay was good for his contracts, and the title to the land is all right;' and Pearson then remarked, 'I reckon it is.' This conversation was more than twelve months after the sale by Kannady to Pearson, and some eight or nine months after the sale by Pearson to Thomas, and after the payment of the purchase-money by these parties. Elisha Lambert states, that Newman came to him, a short time after he bought the land, 'and asked him why he did not tell him it was not paid for;' and Newman had then paid the first note, as he states. Samuel Lambert states, that a man by the name of Hodges bought of Kannady, went into possession, and made a mortgage to Kannady, and afterwards gave up the land to Kannady. 'Wash. Pearson,' he says, 'went into possession in 1860, and lived there one year;' says he 'told him the land was not paid for, and he said he would not pay unless he was safe in paying;' says he told him that John M. Lambert held the notes; that soon after this he heard that Pearson had bought the land; 'never said anything until about the time he and Obe Thomas were about to trade places,' &c. This evidence is not clear and satisfactory. The fact to be proved is left to be inferred. When did he tell Pearson the land was not paid for? When did he tell him that John M. Lambert held the notes? He admits that he said nothing to Pearson until 'about the time' he and Thomas traded, which was in January, 1861. *Non constat*, both Pearson and Thomas may have completed the trade, and paid up the purchase-money, before Lambert mentioned the matter. After Thomas bought the land, he says, he (Lambert) had a conversation with him, 'and Thomas said he was satisfied that, if Kannady did not pay the debt, Lindsay would.' As to Thomas, there is no evidence of notice, as shown by this witness, sufficiently clear to charge him.

John M. Lambert proves, that Pearson and himself talked about this land before Pearson went into possession, or

bought it; but he speaks, mainly, of what occurred after the decision of the Supreme Court in the case of *Lambert v. Kannady*, at June term, 1860; and he does not say what he told Thomas, or that he informed him that any part of the purchase-money was unpaid. Allen Lambert relates some circumstances occurring in 1867, about Thomas coming over to his house, and directing him to look after Lindsay, &c.; but he 'knew no fact going to show knowledge, &c. of unpaid purchase-money, on the part of Thomas or Newman, except general report,' which all these witnesses state. On the part of the respondents, Thomas swears positively, in answer to the 6th interrogatory, that he 'never had any notice of there being any unpaid purchase-money due on said lands before the commencement of this suit; that he bought said lands for said Pearson,' and never had the slightest intimation, before this suit, that any purchase-money was unpaid. He denies the statements of Allen Lambert, as set forth in his answers, as also those of John M. Lambert. William Lindsay, he says, he never knew or heard of, before the institution of this suit; knew nothing of the suit of *Lambert v. Kannady;* lived in Tallapoosa county until 1860, and in Coosa from that year to 1867; paid Pearson for the land, in cash, $2,500, and Pearson and wife made him a deed to the same; Pearson showed him his deed from Kannady and his wife, and he went into possession, and afterwards sold to Newman, &c.   H. C. Stewart states, that he and R. T. Newman went together to Thomas'; that Newman wanted to buy this land of Thomas; that they did not trade, and on their return they came by Allen Lambert's house, and saw him, and Newman told him he wanted this land; that Allen Lambert insisted on his buying, wanted him for a neighbor, &c. Stewart went back the next day, and bought the land for Newman; and Allen Lambert never alluded to any claim, or unpaid purchase-money being due.   Allen Lambert was then the agent of the complainant.   R. T. Newman swears, that he bought said land of J. O. Thomas in 1867–8, and has paid the purchase-money in full; that he had no notice of any unpaid purchase-money, or other claim on the land; that Allen Lambert pursuaded him to make the purchase; that Elisha Lambert told him, 'Go ahead, there will never be any thing done'; that he had then paid Thomas $575 before hearing a word from any one.

" Under the facts of the case as developed by the evidence, the main points of which I have referred to, and under the rules of law above stated, I am satisfied that the complainant is not entitled to the relief prayed.   The evidence is, to some extent, conflicting; and if the matter of notice to Thomas

was left in doubt and uncertainty, the complainant could not succeed; because, when the *onus* of proving a fact is upon a party, if the proof leaves it in a state of doubt, the fact can not be considered established.—*Brandon v. Cabiness*, 10 Ala. 155. Although it was proved, by a number of complainant's witnesses, that the suit of *Lambert v. Kannady*, in the Circuit Court of Coosa, was a notorious fact in the neighborhood; yet, it is proved that Thomas lived in Tallapoosa county until he bought the land. The judgment in that case was rendered at the Fall term, 1859; and it was affirmed by the Supreme Court, at June term, 1860. Thomas moved to Coosa county in 1860. If this general rumor is evidence for any purpose, it is not shown that Thomas had any knowledge of it; and he swears he did not."

The chancellor's decree is now assigned as error.

WATTS & SONS, for appellant.

GEO. F. MOORE, *contra*.

STONE, J.—We have carefully examined the testimony in this record; and we think the complainant has sufficiently proved he has a lien on the land described in the bill, for the purchase-money, unless, in some one or more of the sub-sales under Kannady, a purchaser without notice has intervened. This is *the* question in this case. The special chancellor, before whom the case was tried, has given the case thorough and thoughtful consideration; and we do his opinion simple justice, when we pronounce it an able one.

We think there can be no question that Thomas purchased from Pearson, paid the entire purchase-money, and received a conveyance from him. Lambert had previously conveyed to Kannady, and Kannady to Pearson. These undisputed facts cast on the complainant the duty and burden of proving that Thomas, before he consummated his purchase, by paying the purchase-money and receiving a conveyance, had notice of the unpaid purchase-money from Kannady to Lambert. The testimony on this question is in conflict. That offered by complainant consists chiefly of conversations, and their dates, which must have occurred fourteen or fifteen years before they were deposed to; and this, without any very striking circumstance to impress either the substance or date of the conversation on the memory. We all know how unreliable human memory is, in such conditions. Thomas' testimony is very materially corroborated by the witnesses Stewart and Newman. The main fact he testifies to—want

[Lambert v. Newman et al.]

of notice—could scarcely be ignorantly or innocently false. We do not think the testimony authorizes us to affirm that the chancellor erred in weighing the testimony.

The decree of the chancellor is affirmed.