# Whelan *v.* McCreary.

*Bill in Equity by Principal, to subject Lands to Mortgage Debt, against Purchaser at former Sale by Agent.*

1. *Equitable relief against transactions between principal and agent.*—A person who is acting as agent for a woman, being entrusted by her with moneys to lend out, and with the general management of her business ; and who, being financially embarrassed, and on the eve of bankruptcy, without informing her of his pecuniary condition, procures from her a new power of attorney, which she signs without reading it, and without knowledge of its purpose, nature and extent; authorizing him to foreclose a mortgage, which he had taken to secure her money loaned, "or to extend the time of payment, or to negotiate or leave the same as collateral security, to enable him to raise money for the purpose of putting the same in his business; or any other purpose he may see proper to use said money so raised,"—is guilty of an abuse of the confidence reposed in him; the general terms employed in the power of attorney, so far from conferring any advantage on him, or protecting his subsequent acts as agent, rather cast suspicion on them; and if those acts are prejudicial to his principal, a court of equity will not hesitate to grant relief against them.

2. *Same.*—When an agent lends out the money of his principal, taking a note and mortgage to himself as agent, but without naming his principal, and forecloses the mortgage under a power of sale, becoming himself the purchaser, either directly, or through the instrumentality of another person; the purchase enures to the benefit of the principal, and he may, at his election, either take the property, or charge it with his debt.

3. *Same; rights of purchaser at sale by agent.*—If the purchaser, at the sale made by the agent, really bought for his own benefit, and paid the purchase-money in good faith, without any notice of the rights of the principal, he would be entitled to protection ; and if he paid a part of the purchase-money before he acquired notice, he would be protected *pro tanto.* But the *onus* of proving the facts, necessary to make out this defense, rests on him; and if it is shown that he had knowledge of the fact of agency, and that, instead of paying the purchase-money according to the terms of the sale, he settled for

a part of it by allowing the agent credit on an individual debt,—his defense is not made out.

4. *Same; notice of agency.*—When a purchaser at a sale made by an agent, under a power in a mortgage, has knowledge of the fact of agency, though not of the principal's name, he is put on inquiry as to the name of the principal; and if, instead of paying the purchase-money according to the terms of the sale, he enters into an arrangement with the agent prejudicial to the rights of the principal, he can claim no advantage from his ignorance of the name.

5. *Proof of fraud.*—Although fraud will not be presumed, it may be proved by circumstances; and the probative force of doubtful or suspicious circumstances is increased, when they are left unexplained by the party who ought to explain them.

6. *When mortgagee is purchaser for value.*—When a mortgage is taken as security for a loan or advance contemporaneously made, the mortgagee is entitled to protection, as a purchaser for value, against outstanding equities of which he had no notice.

7. *Notice to corporation, or to director.*—A corporation will not be charged with notice, merely because one of its directors, or other officer, had notice when acting, not for the corporation, but in the transaction of his private business, and under such circumstances that its communication to the other directors or officers was not to be expected.


APPEAL from the Chancery Court of Mobile.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 24th December, 1875, by Mrs. Mary A. Whelan, against William M. McCreary, Mrs. Susan J. Cunningham, as the executrix of the last will and testament of her deceased husband, James Cunningham; and also against Jesse J. Melton and wife, and the Mobile Life Insurance Company. Its object was to set aside a sale of a certain house and lot in the city of Mobile, which had been sold by said James Cunningham, under a power of sale contained in a mortgage, and conveyed by him to said McCreary as the purchaser, and to have the property again sold for the benefit of the complainant, as the owner of the mortgage debt; or, if the sale were allowed to stand, to have a lien declared on the property, in favor of the complainant, for the amount of the debt. The insurance company, it was alleged, claimed a lien or incumbrance on the property, under some arrangement with McCreary; but the complainant insisted that the company was chargeable with notice of her equitable rights, and its lien or claim was subordinate and inferior to hers. The property had belonged to said Melton, who was the business partner of said Cunningham; and it was conveyed by him and his wife, by mortgage dated the 23d May, 1870, to Cunningham, as agent, to secure a loan of $4,500, which belonged to the complainant, and which she had authorized Cunningham to lend to Melton for the term of two years. The mortgage contained a power of sale; and on the 1st July, 1872, default having been made in the payment of the secured debt, Cunningham sold the property under the power, and

conveyed it to said McCreary as the purchaser, on the recited consideration of $6,000. Cunningham died on the 16th November, 1874; and the complainant alleged that, up to the time of his death, she had no knowledge of the sale under the mortgage, but supposed that he was still holding it for her benefit. It was alleged, also, that McCreary was a young man without means, and had paid no part of the recited purchase-money; and that the pretended sale under the mortgage, and the conveyance to McCreary, who was the brother of Cunningham's wife, was a contrivance intended to secure the property to Cunningham or his wife, or for their benefit.

McCreary answered, but not under oath, asserting the *bona fides* and validity of his purchase, and denying any arrangement or collusion with Cunningham; alleging, also, that Cunningham was his guardian, and owed him about $6,000, and that he made the purchase with the purpose of effecting a settlement of this indebtedness, but Cunningham objected to letting the whole of the purchase-money be arranged in this way, and insisted on the payment of $3,000 in cash; that he accordingly borrowed $3,000 from Price Williams, who had as auctioneer made the sale, giving a mortgage on the property to secure its repayment, and paid the money to Cunningham; that he renewed this loan when it fell due, and in March, 1873, when it again matured, he paid it with money borrowed from the insurance company, to whom he executed another mortgage on the property; and he denied that he had notice of the complainant's equitable rights, though he knew that Cunningham was acting as agent for some female friend. An answer was also filed by the insurance company, asserting the priority of its mortgage as a lien on the property, and claiming to be a purchaser for valuable consideration without notice.

On final hearing, on pleadings and proof, the chancellor held, 1st, that the insurance company was entitled to protection as a *bona fide* purchaser for valuable consideration without notice, to the extent of its mortgage debt, which was declared a first lien on the property; 2d, that McCreary's purchase at the mortgage sale was legal and valid, and he was entitled to protection to the amount of the purchase-money actually paid by him, which was stated to be between $3,000 and $3,500; and, 3d, that the complainant was entitled to a lien on the property "for the remainder of her mortgage debt," after deducting said payment by McCreary. From this decree McCreary appeals, and assigns as error that portion of the decree which declared a lien on the property in favor of the complainant. Mrs. Whelan also appeals, and

assigns as error that the chancellor ought to have declared a lien in her favor to the full amount of her mortgage debt, in preference and priority to any claim in favor of either of the defendants. The case was decided in May, 1879, but has only recently come to the hands of the Reporter.

JAMES BOND, for Mrs. Whelan.—The complainant was entitled to have a lien declared on the property, in her favor, to the full amount of her debt, as against all the defendants. If there was any connivance or arrangement between Cunningham and McCreary, by which the latter, in effect, became the mere holder of the legal title, for the benefit of Cunningham or his wife; this was a fraud on the rights of the complainant, against which a court of equity will relieve her. If the evidence should be held insufficient to establish collusion between Cunningham and McCreary, and if the latter really purchased for his own benefit, as he claims; yet he can not be allowed to protect himself, at the expense of another; and although he may not have known the name of Cunningham's principal, he was informed fully as to the fact of agency, and does not deny it. Whatever is sufficient to put a party on inquiry, is sufficient to charge him with notice; and want of notice is no protection, when it results from a want of diligence.—*Herbert v. Hanrick*, 16 Ala. 581; *Chapman v. Glassell*, 13 Ala. 50; *Center v. P. & M. Bank*, 22 Ala. 743; *Gimon v. Davis*, 36 Ala. 590; *Reed v. Smith*, 14 Ala. 380. As to the effect of the word "agent," in the note and mortgage, see Story on Agency, § 151, and notes, § 161; 16 Gray, Mass. 77. McCreary can not complain of the decree, in any event, since he does not claim to have paid more than $3,000; and if he has not paid his bid, the property must be bound for the money.—*Falls v. Gaither*, 9 Porter, 605; *Warner v. Martin*, 11 Howard, U. S. 209; 1 Mason, 440; Story on Agency, § 181; Wharton on Agency, § 210; *Boyd v. Beck*, 29 Ala. 703. The insurance company, also, was chargeable with notice of the complainant's right. It is evident that Price Williams was acting for Cunningham in the whole transaction; he knew all the facts, and was the chairman of the committee of directors through whom the loan was effected. Such intimate knowledge, brought home to a director, while acting in the business of the company, is notice to the company.—*Terrell v. Br. Bank*, 12 Ala. 502; 7 Ala. 205; 10 Ala. 915; 21 Miss. 233; 1 Peters, 199; 12 Howard, 225. Some of the cases go much further in the statement of the principle: *Fulton Bank v. Benedict*, 1 Hall, 480; *Smith v. South K. Bank*, 32 Vermont, 341; 4 Paige, 127; *Mech. Bank v. Schomberg*, 38 Mo. 228. As to the general rule governing notice to

[Whelan v. McCreary.]

corporations, see 10 Watts, 397; 15 Penn. St. 151; 7 Watts & S. 336; 5 Hill, N. Y. 101; 12 Barbour, 27; 30 Barbour, 553; 1 Greene, N. J. 117; 27 Eng. Law & Eq. 140.

E. S. DARGAN, for McCreary; and JNO. T. TAYLOR, and W. BOYLES, for the Mobile Life Insurance Company, *contra.* (No briefs on file.)

BRICKELL, C. J.—These are cross-appeals from a decree rendered by the Court of Chancery, on a bill filed by Mary A. Whelan, seeking to subject real estate in the city of Mobile, to the satisfaction of a debt due her from one Melton, who had by mortgage conveyed said premises to one Cunningham, as her agent, for the security of said debt. The mortgage describes Cunningham as agent, without expressing for whom he was agent; and the promissory note of Melton is payable to him in the same manner. Under a power in the mortgage, Cunningham, on the first day of July, 1872, made sale of the premises; and McCreary became the purchaser, for the sum of six thousand dollars, and Cunningham made a conveyance to him. The principal point of controversy between Mrs. Whelan and McCreary is, whether he paid Cunningham the purchase-money, without notice of Mrs. Whelan's rights, and without notice of the unfaithfulness of Cunningham as her agent; or was the sale and conveyance to McCreary simulated,—really a purchase by Cunningham, McCreary being introduced as the purchaser, in whom the title was to be reposed, to protect the premises against any claim by Mrs. Whelan. The question is rather one of fact, than of law.

The equity of Mrs. Whelan, as against Cunningham, is fully proved, and is clear and undoubted. Reposing in him most unlimited confidence, immediately on the death of her husband, she entrusted to him the entire control of all her business; she conferred upon him powers which made him her general agent. The debt of Melton was for money borrowed, and the money was collected by Cunningham as agent, on a policy of insurance on the life of Mrs. Whelan's husband. For two years, the money remains on the loan to Melton, Mrs. Whelan uninformed as to the fact that the note and mortgage are not made directly to her, or expressly to Cunningham as her agent. She is lulled into security, by the repeated assurances of Cunningham, that the transaction is all right, and that he can keep the papers more safely than she could. There is enough in the evidence to satisfy a well-

[Whelan v. McCreary.]

guarded judgment, that in May, 1872, Cunningham was threatened with, if not involved in financial embarrassments; and it is an established fact, that soon after the mercantile firm of which he was a member became insolvent; and there is no evidence that his individual property, if he had any, was not swept away by the insolvency of the firm. On the 20th May, 1872, he procures from Mrs. Whelan a power of attorney, which, in terms, delegates to him full power *to foreclose the mortgage of Melton, or to extend the time of payment, or to negotiate or leave the same as collateral security, to enable him to raise money for the purpose of putting the same in his business, or any other purpose he may see proper to use said money so raised.* The reason assigned for procuring this power was, that a foreclosure of Melton's mortgage was necessary. The former power of attorney gave full authority for this purpose, as did the power in the mortgage. The instrument was prepared by, or at the instance of Cunningham; was taken by him to Mrs. Whelan's residence, and signed by her in his presence, without her reading it, or having it read to her.

If Mrs. Whelan had been dealing with a stranger, or with one in whom she reposed no special confidence, and who did not stand in such relation that she could properly demand from him protection, her failure to inform herself of the contents of this instrument would be of less, if of any significance. But she was dealing with a trusted agent, in whom she had unbounded confidence, and who knew the confidence was reposed, and who had accepted it. A court of equity, narrowly watching, and closely scrutinizing transactions between all persons who stand in relations of confidence, for the prevention of an abuse of the confidence reposed, could not permit Cunningham to take any advantage, or claim protection for any of his conduct, under this instrument. Advice, honest and fair, preservative, protective, and promotive of her interests, in regard to the mortgage and the debt it was intended to secure, was a duty he owed Mrs. Whelan, from the relation in which he already stood, and the confidence so generously reposed, which he had accepted. If he had knowledge that a stranger was in his own pecuniary condition, with his threatened embarrassments, he could not, and would not, have advised Mrs. Whelan to entrust him with the power of pledging the note and mortgage to raise money, to put in business, which, read in the light of existing facts, meant to ease existing financial troubles in his mercantile business, without security of any kind. Without any disclosure of his financial embarrassment—without any disclosure of his real purpose in procuring this power—without informing his principal of its nature and extent, it is obtained. So

[Whelan v. McCreary.]

far from conferring any advantage on Cunningham, or protecting his future acts as agent, it casts suspicion on all which he may have claimed to do under it; and if his acts under it are prejudicial to his principal, a court of equity can not hesitate to condemn them.

That the note and mortgage of Melton, though not in express terms declaring that they were taken by Cunningham as the agent, and for the benefit of Mrs. Whelan, were so taken, is a fact which is fully proved. If Cunningham was the real purchaser at the sale made by him under the mortgage, though McCreary was nominally the purchaser, that the purchase will enure to the benefit of Mrs. Whelan in a court of equity, has been too long settled to be the subject of discussion. It is equally well settled, that she may elect to take the property, as purchased for her benefit, or to charge it with the payment of her debt. There can be no doubt, also, that if McCreary's purchase was not really for Cunningham, but for himself; yet, if he had not paid the purchase-money without notice of Mrs. Whelan's equity, she can charge the property in his hands with the payment of her debt. The bill is not so framed that Mrs. Whelan can claim a conveyance of the property. The only relief to which she can be entitled, is a charge of her debt on the property; and to this she is entitled whether the purchase by McCreary was real—for his own benefit—or really by Cunningham in the name of McCreary. If McCreary was the purchaser, he can protect himself only by showing that he was a purchaser in good faith, without notice of Mrs. Whelan's equity; and then he would be entitled to protection only to the extent he had paid the purchase-money.

The chancellor was of the opinion McCreary stood in this latter attitude, and protected him to the extent the evidence satisfied him he had paid the purchase-money, without notice of Mrs. Whelan's equity. We can not concur in the conclusion the chancellor has reached on the facts. The burden of proof rests on McCreary to establish the *bona fides* of his purchase. Until he has satisfactorily shown that he is a *bona fide* purchaser, he stands in the place of Cunningham—affected by all the equities which would affect him. The plea of a *bona fide* purchase would soon become a shelter for fraud, rather than a shield for the protection of fair dealing, if he who interposes it, to avoid a clearly established equity, older in point of time, binding on the conscience of him from whom the purchase is made, was not compelled to prove the fairness of his purchase. The whole transaction between McCreary and Cunningham is clouded with circumstances which must excite suspicion, arousing the vigilance of a court

required to pass judgment upon them, and which McCreary was bound fully and fairly to explain.

It is not insisted that McCreary paid, or that it was contemplated he should pay, the entire purchase-money in cash. His answer indicates that he made the purchase, expecting to pay the purchase-money with a debt due him from Cunningham. But Cunningham refused to permit the whole purchase-money to be thus applied, requiring the payment of three thousand dollars in cash, and assenting to the application of the remainder in payment of his debt. He thus strips himself of all right or equity to protection as a *bona fide* purchaser; for it is not pretended that, as agent, Cunningham had the extraordinary power of receiving his own debt in payment of the purchase-money due to his principal. The last power of attorney, obtained under the circumstances to which we have adverted, conferring the singular power to *pledge as collateral security, or to raise money in any way*, indicates, as the purpose for which the pledge was to be made, or the money raised, that it was for the purpose of *raising money to put in the business of* Cunningham. His business was that of a commission-merchant; and it was aid in that business, and not for the purpose of paying his individual debts, contracted without the business, or by an individual breach of trust in a fiduciary relation, the power was given. The transaction between McCreary and Cunningham had its inception in a contemplated breach of trust by Cunningham, in which McCreary participated.

But, it is argued that McCreary did not know, or have notice, that Cunningham was agent for Mrs. Whelan. We shall not inquire whether the evidence leads to the conclusion that McCreary had actual notice that Mrs. Whelan was the principal of Cunningham. The circumstances strongly tend to prove it; but their insufficiency for that end may be admitted. He had actual notice that McCreary was acting as agent, and not as a principal. The mortgage, which was Cunningham's only power to sell and convey, was made to him as *agent;* the advertisement of sale, read in the presence and hearing of McCreary, at the time of his purchase, was by Cunningham as *agent;* and his conveyance to McCreary describes him as *agent*, and is executed by him as *agent.* McCreary was thus put on inquiry, as to who was the principal, and was bound to inquire, if he entered into a transaction with Cunningham, which was not beneficial, but was prejudicial to the principal. If he had simply purchased, and had paid the purchase-money in cash, as was required by the terms of sale, by the power under which it was made, and by the advertisement of sale, he would not have incurred any

liability to the principal, whether known or unknown. But, entering into a transaction, with a knowledge that Cunningham was acting as agent, by which the purchase-money was to be paid, in whole or in part, not according to the power in the mortgage, nor the terms of sale ; and being put on inquiry as to who was the principal, his ignorance of that fact is superinduced by his own negligence, or willfulness, and is of no avail to him. His failure to inquire is rather another circumstance of suspicion against him.

The relation of brothers-in-law existed between Cunningham and McCreary, and the superadded relation of guardian and ward. McCreary was just of age, and unmarried, when the sale was made, and an inmate, if not a member of Cunningham's family, and had been for some years previously. He was without money, and had no means, except the debt due from Cunningham as guardian, no part of which had been paid. The property sold is a residence in the city of Mobile, and the price bid at the sale was six thousand dollars,—just the amount claimed by McCreary to be due him from Cunningham. It is certainly rather unusual for a young man, just of age, having no family, to invest his entire fortune in a residence in a city. He has never occupied it, or derived rent from it, so far as the record discloses, but it is occupied by his sister, Mrs. Cunningham, free of rent. The bill avers that the purpose of Cunningham, in the sale under the mortgage, was to acquire the property as a residence for his family, and to protect it from liability to Mrs. Whelan ; and that McCreary was introduced as the purchaser, who agreed to hold it for Cunningham, or for his wife. These allegations are flatly denied by McCreary, in his answer, which is not verified. When examined as a witness on his own behalf, he does not repeat these denials. The seventh cross-interrogatory requires him to state, if it was not understood, or agreed, that Cunningham, or Mrs. Cunningham, was to have the use or benefit of the purchase of the premises. The answer is brief : " *It was not at the time of the sale.*" The answer is an implied admission that there was such an agreement before, or subsequent to the sale, and a negation of it only at the *time of the sale.* " The presumption that a man will do that which tends to his obvious advantage, if he possesses the means, supplies a most important test for judging of the comparative weight of evidence. It is to be weighed according to the proof which it was in the power of one party to have produced, and in the power of the other to have contradicted."—1 Starkie, 866. Fraud will not be presumed, but it may be proved by circumstances; and the circumstances may lead more certainly to the conclu-

sion, when a party, having the means and opportunity to explain them, leaves them unexplained. It was a duty McCreary owed to himself, to his adversary, and to the court, if the denials of his answer were true, to have repeated them in his evidence when testifying for himself. Failing to do this, and resting his negation of the fact that the purchase was by agreement for the benefit of Cunningham, or Mrs. Cunningham, *only as to the instant of time when the sale was made,* the probative force of the circumstances which tend to establish the averments of the bill is increased.

The only money satisfactorily shown to have been received by Cunningham on the purchase, was raised by a loan, secured by a mortgage on the premises. The loan was negotiated by McCreary and Cunningham jointly, the latter indorsing the note of the former for it. When this note became due, a new loan was negotiated, Cunningham and McCreary jointly negotiating it; and a note given for it, on which Cunningham is indorser; and it is secured by a mortgage on the premises. The amount borrowed was three thousand dollars. McCreary states that he paid on the purchase thirty-five hundred dollars, of which three thousand dollars was borrowed. But, when inquired of, on cross-examination, as to how much he had at the time of the sale, he says, he does not remember. Yet, if he then paid, as he says, thirty-five hundred dollars, having borrowed three thousand dollars of it, he must have known that he then had five hundred dollars. The sale was made very soon after McCreary became of age; and he does not show, by his own testimony, or otherwise, how he obtained, or could have had any money, to pay on the purchase. The second loan, from the Mobile Life Insurance Company, has been reduced by payments; but it is not shown when, or by whom, these payments were made. It is a most significant fact, that McCreary does not, in his testimony, state that he made any one of these payments, nor by whom they were made, nor from what source the money was derived.

Whoever claims protection as a *bona fide purchaser,* or claims to be protected against a clearly proved equity, because he has paid money in ignorance of it, and would suffer loss if he was charged with the equity, though he is without fault, must prove the payment of the money. Payment is as essential, as the *bona fides* of his dealing.—*Lloyd v. Lynch,* 23 Penn St. 419; *Snelgrove v. Snelgrove,* 4 Dess. Eq. 274; 2 Lead. Eq. Cases, 99–100, 73. In view of all the evidence in this cause, it can not be said it is proved that McCreary has made any payment of the purchase-money. The premises remain, consequently, affected in his hands by the equity of Mrs. Whe-

[Whelan v. McCreary.]

lan, as they would have been if Cunningham were the purchaser, or McCreary had contracted to purchase from him, not having paid the purchase-money.

Whoever gives value, or enters into transactions by which his position is materially changed, and from which change loss must ensue, on the faith that the vendor of real estate, or person with whom he deals, has, as the title-papers exhibit, a clear legal title, will be protected against outstanding and latent equities, of which he has no notice. A mortgagee, taking a security for a cotemporaneous loan or advance, falls within the rule, and is entitled to protection.—*Boyd v. Beck*, 29 Ala. 713; *Wells v. Morrow*, 38 Ala. 125. The only notice, actual or constructive, of Mrs. Whelan's equity, which is attributed to the insurance company, is imputed because notice, it is insisted, is traced to Williams, one of the directors, active and instrumental in making the loan to Cunningham and McCreary, and taking the mortgage. Whatever facts may have been known to Williams, which ought to have excited inquiry on his part, came to his knowledge while he was acting as the agent of Cunningham, in a transaction in which the insurance company had no interest. The rule is settled in this State, that a corporation will not be affected by notice, which one of its directors, or other officer, may have received, when not acting for the corporation, but in the transaction of his own private affairs, and under such circumstances that its communication to other officers of the company is not to be expected.—*Terrell v. Br. Bank of Mobile*, 12 Ala. 502. If the facts were stronger, for the imputation of notice to Williams, than are found in the record, notice could not be imputed to the insurance company. The company having made the loan, and taken the mortgage, without notice of Mrs. Whelan's equity, must be protected.

The result is, on the appeal taken by McCreary, the decree must be affirmed, and he must pay the costs thereof in this court, and in the Court of Chancery. On the cross-appeal of Mrs. Whelan, the decree must be reversed, and a decree will be here rendered in conformity to this opinion; and the appellee McCreary must pay the costs of said cross-appeal.