# Spira *v.* Hornthall, Whitehead, Weissman & Co.

*Statutory Detinue for Goods, by Vendor against Remote Purchaser.*

1. *Fraudulent purchase of goods; rights of seller.*—When an insolvent purchaser obtains goods by misrepresentation, or by fraudulent concealment, having at the time no intention to pay for them, the seller may disaffirm the sale, and reclaim the goods, as against the fraudulent purchaser, or any one claiming under him with notice of the fraud.

2. *Same; sub-purchase for value, without notice; innocent sufferers by wrongful act of third person.*—If the goods have passed into the hands of a sub-purchaser for valuable consideration, without notice of the fraud, his right is superior to that of the original vendor, and the latter can not recover the goods from him ; the principle applying as between them, that where one of two innocent persons must suffer by the wrongful act of a third person, the loss must fall on him who put it in the power of that person to perpetrate the wrong; and a remote sub-purchaser is equally entitled to protection against the claim of the vendor, when either he or any one of the intermediate purchasers acquired the goods for valuable consideration without notice.

3. *Same; who is purchaser for value.*—Merely agreeing to take the goods in payment of an indebtedness past-due, and entering a credit on the account for the price, without surrendering anything valuable, does not entitle the creditor to protection as a purchaser for valuable consideration; *secus*, if he takes them in absolute payment and satisfaction, and surrenders the evidence or securities of his debt.

[Spira v. Hornthall, Whitehead, Weissman & Co.]

4. *Same; burden of proof as to notice.*—When the vendor has proved that the goods were obtained from him by the fraud of the purchaser, it is incumbent on the sub-purchaser, claiming protection against the rights of the vendor, to show that he paid value for them; but, when he has done this, the *onus* is on the vendor to prove that he had notice of the fraud.

5. *Charge misplacing burden of proof.*—When the evidence is conflicting as to a material fact, a charge misplacing the burden of proof must work a reversal, without regard to the preponderance of the evidence.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by the appellees, who were merchants doing business in the city of New York, and who sued as partners, against Abraham H. Spira, to recover a large quantity of goods, which the plaintiffs had sold to one S Vogel, and which the defendant claimed as a sub-purchaser from Vogel; and was commenced on the 8th December, 1883. The cause was tried on issue joined, and a bill of exceptions was reserved by the defendant during the trial, in which the facts are thus stated:

"On the trial, there was evidence tending to show the following: Plaintiffs were in October, 1883, and had been for several years prior thereto, wholesale dealers in clothing, residing and doing business in the city of New York. During that time, S. Vogel did a retail clothing business in the city of Mobile, and there were dealings between him and plaintiffs in the line of their business; he buying goods from them on credit, and making his notes to them for such purchases. During and after the summer of 1883, at sundry times, he obtained money from them, by having them discount his notes, and raised money by inducing them to accept his drafts drawn on them. He represented to them, during the whole time he so did business with them, that he was a solvent and prosperous merchant, fully able to pay for all the goods purchased by him from them, and to protect them as to all notes discounted and all drafts accepted for him by them. Prior to his purchase of the goods here sued for, he had repeatedly promised them to remit to them weekly, and to pay his notes, given for merchandise purchased, as they matured, and had repeatedly broken such promises. From about August, 1883, up to his purchase of the goods now sued for, he had continually drawn on them, and telegraphed them untruths to get them to accept his drafts; and he had kept peculiar books of account, which could not be understood without his personal explanation. Plaintiffs had examined his said books several times, before said purchase,—generally about once a year; but he was present with them on each of said examinations, and fully explained his books, and plaintiffs then fully understood them; all of which

facts were known to plaintiffs before they sold him the goods now sued for, except that the representations which he telegraphed to them, to get them to accept his drafts, were untrue, and they did not know such representations to be untrue until after they had sold and delivered to him the goods now sued for. Said Vogel purchased from plaintiffs the goods now sued for in October, 1883, on a credit of six months, and obtained said goods upon representations to them that he was a solvent and prosperous merchant, and would be able to pay for them; but he was then insolvent, and had known his insolvency for more than one year prior to his purchase of said goods. Plaintiffs shipped the goods to him, from New York, in October, 1883; and they were received by him, and put on sale in his store, in the usual way, about the first of November, 1883. A portion of said goods were sold by him during the month of November, and he sold the remainder, being about eighty per cent. of the whole, to Bernstein and Mrs. Schonfeld, as hereinafter stated.

"Prior to the first of December, 1883, said Bernstein and Mrs. Schonfeld had each loaned money to said Vogel, or paid out money for him at his request; he had collected sundry sums of money for Mrs. Schonfeld, on debts due her, and had used the same for his own benefit; and there was then money due from him to said Bernstein, for money so paid for him, the sum of three thousand dollars; and to Mrs. Schonfeld, for money loaned to him, and for her money so collected and used by him, the sum of ten thousand dollars; and all of said debts were then past-due. On said 1st December, 1883, said Bernstein and Mrs. Schonfeld were indorsers for said Vogel on negotiable promissory notes then running to maturity, but not due, held by other parties, to the amount of fourteen thousand dollars; and such other parties had taken such notes in settlement of a real indebtedness to them by said Vogel, for the whole amount thereof, and were justly entitled to be paid the whole amount of said notes as they matured. On said 1st December, 1883, said Vogel sold absolutely to said Bernstein and Mrs. Schonfeld his stock of goods, the consideration of such sale being the absolute satisfaction of his said past-due indebtness to them, so amounting to thirteen thousand dollars, and their agreeing, absolutely and unconditionally, to fully pay each of said notes as they matured, on which they were indorsers for him, and to protect him against all liability to pay any part thereof; which agreement was in writing, signed by them, and delivered to said Vogel at the time said sale was made; and said consideration was equal in amount to the fair value of the goods so sold. Vogel delivered to them all the goods on the

[Spira v. Hornthall, Whitehead, Weissman & Co.]

day of sale, and among said stock were the goods sued for in this action.

" At the time of said sale, neither Bernstein nor Mrs. Schonfeld had any knowledge of the fraud practiced by said Vogel on plaintiffs to induce them to sell him said goods, or notice of any facts which, if followed up, would have informed them of such fraud ; and they paid each of said promissory notes at maturity, the payment of which had been assumed by them, amounting to fourteen thousand dollars. About five days after their purchase of said goods from Vogel, said Bernstein and Mrs. Schonfeld sold said entire stock of goods, including the goods here sued for, to the defendant in this action, and gave him a written warranty of title to said goods. Said sale to defendant was made absolutely and unconditionally, and without any benefit or trust therein being reserved to said Bernstein, Mrs. Schonfeld, or any one else. Defendant paid for said goods by delivering to said Bernstein and Mrs. Schonfeld, at the time of said sale, the check of one Pincus on a bank for three thousand dollars, payable on demand, and his own negotiable promissory notes, payable in bank, and indorsed by him, for the remainder of the price ; and said check and notes were the full value of the property so purchased by him. At the time of said purchase and payment, defendant had no knowledge of the fraud practiced by said Vogel on plaintiffs, through which he had induced them to sell him said goods, and no notice of any facts which, if followed up, would have informed him of such fraud. Plaintiffs never did any act towards disaffirming their sale of the goods to Vogel, until about two days after said goods had been thus sold and delivered to defendant, and after he had delivered to said Bernstein and Mrs. Schonfeld the check and promissory notes in payment thereof. Said check of Pincus was held by Bernstein for several days, without being presented to the bank ; but this was done of his own motion, and without any request on the part of said Pincus or the defendant ; and it was then taken up by defendant, who gave his own bank check to said Bernstein, payable on demand, for the same amount, which check was at once presented to the bank by said Bernstein, and was paid. Said promissory notes given by defendant to said Bernstein and Mrs. Schonfeld were, each and all, paid by him at the time and place they became due ; but no one of them was paid, nor was said check paid, until after plaintiffs had disaffirmed their sale to said Vogel.

" There was evidence on the part of the plaintiffs tending to show the following : That there was a close blood relationship between said defendant and said Bernstein and Mrs. Schonfeld, and that each of them was closely connected with said S. Vogel by marriage, as follows : Spira's uncle married Vogel's sister ;

Vogel married a first cousin of Spira, and Vogel's brother married another one of Spira's cousins. Spira was a nephew of said Bernstein, and of Mrs. Schonfeld, each of whom was connected with said S. Vogel, in three ways : Said Bernstein and Mrs. Schonfeld are brother and sister ; a younger brother of theirs married Vogel's sister ; Vogel married the daughter and only child of Mrs. Schonfeld, and his brother, Herman Vogel, married the daughter of said Bernstein. Said Herman was also, at this time, a partner in business with Bernstein. That each of them had notice of the fraud practiced by said Vogel on plaintiffs to induce them to sell him said goods, before Vogel sold to said Bernstein and Mrs. Schonfeld. That said Vogel had, some years before his purchase of said goods, raised money from other parties in Mobile, upon promisory notes on which the names of said Bernstein and Mrs. Schonfeld were forged as indorsers. That a part of the alleged debt from said Vogel to Mrs. Schonfeld, in satisfaction of which his sale to them was made, was simulated ; that the property so sold was worth much more than the consideration alleged to have been paid by them ; and that the sale by them to the defendant was merely intended to cover up the property, and more effectually put it beyond the reach of Vogel's creditors.

"The court charged the jury, generally, that if any part of the consideration paid by Bernstein and Mrs. Schonfeld to Vogel, for the goods sued for, was the satisfaction of an antecedent debt due from Vogel to them, or to either of them, then they were not *bona fide* purchasers for value, and such purchase by them was no bar to plaintiffs' recovery in this suit."

The defendant excepted to this part of the general charge, and he requested the following charge, with others, which were in writing : "6. If the jury believe, from the evidence, that Vogel sold the goods to Bernstein and Mrs. Schonfeld at a fair price, in payment of his indebtedness to them, and in consideration of their paying other debts due by him, before plaintiffs had done any act toward disaffirming the sale of such goods ; then, even though Vogel obtained the goods from plaintiffs by a fraud, his sale to them vested in them a good title ; unless the jury shall further find from the evidence that, at the time of such sale, they had knowledge of said fraud of Vogel, or notice of such facts as, if followed up, would have informed them of such fraud ; and in such case, the burden of proving such knowledge or notice is upon the plaintiffs, and they must prove the same to the satisfaction of the jury." The court refused this charge, and the defendant excepted to its refusal.

The charge given, and the refusal of the charges asked, are now assigned as error.

[Spira v. Hornthall, Whitehead, Weissman & Co.]

OVERALL & BESTOR, with whom was R. H. CLARKE, for appellant.—(1.) The satisfaction of an antecedent debt is a *bona fide*, legal consideration, which the courts will uphold and sustain.—*Crawford v. Kirksey*, 55 Ala. 282; *Hodges Brothers v. Coleman & Carroll*, 76 Ala. 103; *Lehman v. Kelly*, 68 Ala. 192; *Meyer & Co. v. Sulzbacher*, 76 Ala. 120. Although merely entering a credit on an account past-due, without surrendering anything valuable, does not constitute a *bona fide* purchase for value; yet the principle does not apply here, since it is shown that Bernstein and Mrs. Schonfeld paid out thirteen thousand dollars, in addition to their antecedent debt, and the defendant paid out twenty-three thousand dollars, none of which was an antecedent indebtedness.—38 Maine, 561. The cases cited for appellees, as to fraudulent conveyances founded partly on a valid debt, have no application to the defendant in this case, who is two degrees removed from Vogel, and no part of the consideration paid by him was fictitious, fraudulent, or antecedent. (2.) The plaintiffs alleged fraud, and the burden of proving it was on them.—*Thames & Co. v. Rembert's Adm'r.*, 63 Ala. 561; *Tompkins v. Nichols*, 53 Ala. 197.

J. L. & G. L. SMITH, *contra.*—1. To the extent that the property was taken by Bernstein and Mrs. Schonfeld in payment of an antecedent debt, their purchase did not cut off the right of plaintiffs, as original vendors, to reclaim the goods. *Loeb & Bro. v. Peters & Bro.*, 63 Ala. 249; *Loeb & Bro. v. Flash Brothers*, 65 Ala. 542; Bump Fraud. Conv. 63–65; *Buffington v. Gerish*, 15 Mass. 156; *Barnard v. Campbell*, 58 N. Y. 73. The right of stoppage *in transitu* depends upon the same principle.—*McDonald v. Fairwell*, 3 Otto. An analogous principle holds that a judgment creditor, purchasing at his own sale under the execution, is not a *bona fide* purchaser for value.—*Devoe v. Brant*, 53 N. Y. 462. Nor can Bernstein and Mrs. Schonfeld claim anything on account of their assumption of the outstanding notes, on which they are liable as indorsers for Vogel; for they did not thereby part with anything valuable, nor incur any new or increased liability. The decisions of this court cited for appellant, holding that the payment of an antecedent debt constitutes a valuable consideration sufficient to protect the purchaser against prior equities, each involved a conveyance of the grantor's own property, honestly owned by him; in some of them, the parties complaining of injury suffered by their own *laches;* and they all rest on the necessities of commerce. The exact question, where the property of another, acquired and held by fraud, was given in payment of an antecedent debt, was first presented in *Loeb & Bros. v. Peters*, 63 Ala. 249.

2. Under the circumstances of the case, the burden of proof was on the defendant to show that, at the time of his purchase, he had no knowledge or notice of the fraud practiced on plaintiffs by Vogel. Although the evidence introduced by the defendant tended to show that, at the time he contracted for the purchase of the goods, he had no notice or knowledge of Vogel's fraud; yet the fact was undisputed, that his notes and ·check, given for the price, were not paid until several days after plaintiffs had disaffirmed the sale. Until that payment was made, his purchase was not complete, as against plaintiffs, and he was not injured; and he was charged with knowledge, before he made it, that plaintiffs had reclaimed the goods. The evidence was undisputed, too, as to the fraud and insolvency of Vogel, the near relationship of all the parties, the knowledge of the fraud on the part of the defendant's immediate vendors, and the sale of the entire stock of goods in each case; and there was evidence tending to show that the sale to the defendant was merely intended to cover up the property, and more effectually put it beyond the reach of Vogel's creditors. Under this state of facts, the burden was on the defendant to show a valuable consideration paid by him in good faith, and to explain all the suspicious circumstances attending the transaction.—*Hubbard v. Allen*, 59 Ala. 283; *Harrell v. Mitchell*, 61 Ala. 270. The defendant could not, then, have been injured by the charge as to the burden of proof.

CLOPTON, J.—The instructions given and refused present, as the first question raised by the assignment of errors, whether the payment or satisfaction of an existing debt is a consideration sufficient to defeat the vendor's right of recovery against a purchaser without notice from a fraudulent vendee. The sale of the entire stock of goods, whether in the usual course of trade or otherwise, is a matter addressed to the jury in determining the *bona fides* of the transaction, and is not presented by the record for our consideration.

Though of comparatively modern origin, the doctrine is now firmly grafted on the jurisprudence of both England and this country, that a vendor, induced by misrepresentation, or fraudulent concealment, to sell goods to a purchaser who is insolvent, and has no intention to pay for them, may disaffirm the sale, and reclaim the goods, as against the fraudulent vendee, or any person claiming under him with notice of the fraud. The rule is founded on the requirements of honest and fair dealing; and as said by STONE, J., is "a growth upward in commercial morals." It rests on the fundamental principle, that no person can, in good conscience, be allowed to take and retain the property of another, without paying the consideration price, or without a

*bona fide* intention, at the time of purchase, to pay for it. There can be no question of the plaintiffs' right of recovery, if the controversy were between them and their vendee.

2. The vendor, on acquiring knowledge of the fraud, must promptly disaffirm the sale. The supervening right of a purchaser from the fraudulent vendee, for value, and without notice of the fraud, is superior to the equity of the original seller, and operates to defeat his title to the goods sold. This is on the familiar principle, that where one of two innocent persons must suffer from the wrongful act of a third person, the burden must fall on the one who puts it in the power of such third person to perpetrate the wrong. To entitle a sub-purchaser to protection, he must be without notice of the fraud, and must have parted with something valuable on the strength of the property, and on the faith of the possession and apparent right to sell of his vendor. The goods sued for were sold by the plaintiffs to Vogel, in October, 1883, and were sold by him, with the balance of his stock, to Bernstein and Mrs. Schonfeld, on December 1, 1883, in consideration of the satisfaction of a precedent indebtedness of $13,000, and an agreement in writing to pay certain notes, of the aggregate amount of $14,000, on which they were indorsers for Vogel, and to protect him against any liability to pay any part thereof. Bernstein and Shonfeld subsequently sold the stock of goods to defendant, the consideration being a check for several thousand dollars, and negotiable notes for the remainder of the purchase-money. If Bernstein and Shonfeld, and the defendant, or either of them, were purchasers for value without notice, the plaintiffs are not entitled to recover.

3. Counsel for appellees rely on the rule, as held in *Loeb & Bro. v. Peters*, 63 Ala. 243, which was a case of stoppage *in transitu*, and in *Loeb & Bro. v. Flash Brothers*, 65 Ala. 726, which was a case similar to this. In each it was held, that entering a credit for the value of the property on the past-due account of an insolvent debtor is not a sufficient consideration to defeat an action by the defrauded vendor. In the latter case it is said : "Merely entering a credit on an account past-due, without surrendering anything valuable, would not, under any circumstances, constitute them *bona fide* purchasers, so as to defeat an action such as this." The reason is stated in the first case, where it is said, the purchaser has nothing more to do, in order to get even, than to debit his vendor with the same sum, for non-delivery of the goods, in consequence of the defect in title. The purchaser, in neither case, changed his position, or parted with anything valuable.

It is settled doctrine in this State, that "receiving negotiable paper in payment of a precedent debt can not be distinguished

[Spira v. Hornthall, Whitehead, Weissman & Co.]

from purchasing it with money, or taking it in payment for property sold; and when it is so received, it is taken in the usual course of trade, and the holder is entitled to protection" against latent equities between the original parties.—*Reid v. Bank of Mobile*, 70 Ala. 199; *Bank of Mobile v. Hall*, 6 Ala. 639. While a mortgage given to secure an antecedent debt, the mortgagee parting with nothing of value *in presenti*, is insufficient as protection against outstanding equities; if the consideration of the mortgage is the security of a debt based on an extension of the time of payment, the mortgagee is a purchaser for value, and, if innocent, is entitled to protection. And the payment of an existing indebtedness is a sufficient consideration to maintain and uphold an absolute conveyance, there being no secret trust or benefit reserved, against the claims of other creditors of the debtor, though he is insolvent, and the known effect is to leave him without means to pay his other debts. *Whitfield v. Riddle*, at present term; *Rogers v. Adams*, 66 Ala. 600; *Crawford v. Kirksey*, 55 Ala. 282. A purchaser who parts with value, either in money, securities, or other property, or who, by the transaction, materially changes his position to his consequent detriment, on the faith of his vendor's clear right of sale, is entitled to be protected against latent equities of which he had no notice.— *Whelan v. McCreary*, 64 Ala. 319.

It is insisted in the argument of counsel, that the rule which prevails when the property received in payment of a precedent debt is indisputably the property of the debtor, which he has an undoubted right to apply to the payment of his honest debts, is inapplicable, where the property has been obtained by fraud, and it is subject to the right of the seller to retake it on discovering the fraud. The inapplicability of the rule is based on the general doctrine, that "no one can transfer to another a better title than he has himself." To the general doctrine there are well recognized exceptions, one of which is, "when the owner, *with the intention of sale*, parts with the property, though under such circumstances of fraud, as would authorize him to reclaim it from the vendee."—*Leigh Bros. v. Mo. & O. R. R. Co.*, 58 Ala. 165. When the intention is to transfer both possession and property, it is a contract of sale, and the property passes, however fraudulent may have been the means used to effect it. The contract is not void *ab initio*, but voidable at the election of the seller. But, until he elects to avoid, "if his vendee transfers the goods, in whole or in part, whether the transfer be of the general or of a special property in them, to an innocent third person for a valuable consideration, the rights of the original vendor will be subordinate to those of such innocent third person."—1 Benj. on Sales, §§ 648, 649.

10

The innocent purchaser is without fault; he acts on the faith of ostensible ownership and right of disposition, on which he is authorized to repose, there being no attendant suspicious circumstances. The owner, by the contract of sale, has clothed his fraudulent vendee with all the *indicia* of ownership and right of sale. A purchaser may buy with equal confidence and safety, where the appearances of ownership, created by the original owner, are such as to produce a reasonable belief of its actuality, as also where it is in fact absolute and unconditional. We discover no satisfactory reason why the rule of protection, which is extended to a creditor receiving negotiable paper, or an absolute conveyance of property admitted to be the debtor's, should not be equally available to a purchaser from a fraudulent vendee, whether such vendee accepts a conveyance of the property with intent to defraud the creditors of his grantor, or obtains it by fraudulent devices, from his vendor.

As said above, we held in *Loeb & Bro. v. Flash Brothers, supra*, that merely entering a credit on a past-due account, for the value of the property, is not a consideration that will constitute the creditor a purchaser for value, for the reason, that it is not, on failure of the creditor to obtain or retain the goods, a payment. The distinction is between an *agreement* to receive goods in payment of an existing indebtedness, and an *actual satisfaction* of the indebtedness; as where the creditor, by the purchase, materially changes his position, and gives up something of value on the strength of the property, such as a surrender of the evidences of indebtedness, or prior security. If the creditor's title should fail, by reason of his debtor's fraud in getting the goods, his debt still remains unsatisfied, and the right of the original owner to avoid his sale, and recover the goods from the transferree of his fraudulent vendee, will not be defeated. But, if the creditor's debt is, by the transaction, in fact and in law satisfied, he will, if innocent, receive the protection of a *bona fide* purchaser against the equity of the defrauded vendor.—*Shufeldt v. Pease*, 16 Wis. 659. The sufficiency of the evidence to show that the satisfaction of an existing debt was part of the consideration paid for the goods is addressed to the consideration and determination of the jury, under proper instructions from the court. It is not our province to intimate an opinion, and if it were, the record does not disclose the necessary facts. We merely decide, that assuming the hypothetical fact stated in the charge—if any part of the consideration was the *satisfaction* of an antecedent debt due by Vogel to Bernstein and Mrs. Schonfeld, or either of them—it was error to instruct the jury they were not *bona fide* purchasers for value.

4.   The remaining question relates to the burden of proof as

to notice of the fraud of Vogel. On the hypothesized facts, that the defendant purchased the goods from Bernstein and Mrs. Schonfeld in good faith, and paid them a fair and valuable consideration before the disaffirmance of the sale by plaintiffs, the court refused to instruct the jury, that the burden of proving defendant had notice of the fraud of Vogel in obtaining the goods, was on the plaintiffs. As a general rule, the *onus probandi* is on the party holding the affirmative, though the rules of pleading may require a negative averment by the adversary party. The question, on which party was the burden of proving notice of infirmities in a negotiable paper that had been transferred, was before this court in *First National Bank v. Dawson* (at present term), where it was held, that on the issue of notice *vel non*, the burden of proof was on the affirmant. The same rule applies in the case of a purchase from a fraudulent vendee. When the plaintiffs proved that Vogel had obtained the goods from them by fraudulent devices, it was incumbent on the defendant to establish that he was a *bona fide* purchaser; that is, that he actually purchased and paid value. Proof of payment of value and a purchase casts on the plaintiffs the *onus* of showing that the defendant, at the time of the purchase, had notice of the fraud, if by such notice they seek to subordinate his right to theirs.—*Easter v. Allen*, 8 Allen, 7.

5. Counsel have earnestly pressed upon our attention the sufficiency of the evidence to show *mala fides* in the purchase by Bernstein and Mrs. Schonfeld, and by the defendant, and that they were chargeable with notice of the fraud of Vogel, for the purpose of establishing the conclusion, that the instruction on the burden of proof did not affect them injuriously, and is not a reversible error. We must decline to enter on the consideration. The record recites there was evidence tending to prove both phases of the case. Which phase was proved, was a question for the jury. When there is conflicting evidence, it can not affirmatively appear that a charge misplacing the burden of proof works no injury.

Reversed and remanded.