DENNIS v. ATLANTA NAT. BUILDING & LOAN ASS'N et al.

(Circuit Court of Appeals, Fifth Circuit.    April 11, 1905.)

No. 1,348.

1. CORPORATIONS—AGENTS—AUTHORITY—NOTICE.

Where a person who transacted the negotiations for a loan by complainant loan association was its local representative, adviser, and secretary and treasurer, in the city where the loan was made, and had general supervision and advisory powers with reference to loans made and the general policy of the association's business in that territory, notice to him of facts affecting the title of borrowers to land mortgaged to the association was notice to the association.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 1748–1754.]

2. MORTGAGES—DEFECTIVE TITLE.

Certain residence property occupied by a mother and her daughters was sold for taxes in 1882; the certificate being subsequently assigned to the husband of one of the daughters, who took no deed until 1890, when a deed was issued to him, reciting a consideration of $175.    The property, which was worth at least $10,000, was subsequently conveyed by the husband to his wife and sisters-in-law for $10 and love and affection, and they thereafter mortgaged it to complainant for $5,000.    At the time the mortgage was executed the mother was living on the property, and inquiry of her would have disclosed that she claimed to be the owner of the property, and that the tax sale was void.    No inquiry, however, was made of her, and after the mortgage was executed she instituted a suit in the state court, in which the tax sales and conveyance to the daughters were set aside.    *Held*, that the mortgagee was charged with notice of the mother's equity, and was not, therefore, entitled to enforce the mortgage against the property.

Appeal from the Circuit Court of the United States for the Middle District of Alabama.

For opinion below, see 128 Fed. 293.

This case is an appeal from a decree of the Circuit Court for the Middle District of Alabama foreclosing a mortgage in favor of the Atlanta National Building & Loan Association against an undivided one-half interest in certain real estate in the city of Montgomery, Ala. The issues in the case arose under the following state of facts: In 1873 Mrs. Susan W. Gilmer was left a widow with nine children—three sons and six daughters. In 1875 Mrs. Gilmer became the owner of a house and lot in Montgomery described as the east half of lot No. 5, square No. 9, East Alabama, city of Montgomery. Mrs. Gilmer lived in the house continuously from the time of the purchase until she died, in March, 1893, and had probably lived there before she bought and before her husband's death. In 1873 Mrs. Gilmer's daughter Susan married A. Campbell Jones, who thereafter boarded with his mother-in-law. In 1873, when Mrs. Gilmer's husband died, most of the children appear to have been minors. Mrs. Gilmer kept a boarding house in the premises in question, although in 1886 Mrs. Jones, and three other daughters who were unmarried, took the more active management and control of the boarding house. In 1882 the property in question was sold for state and county taxes. The description of the property as sold was "a house and lot situated on the corner of Bibb and Washington streets in the said City of Montgomery." The property was purchased at this sale by one Martin, and he took a certificate of purchase in accordance with the laws of Alabama with reference to tax sales. During the same year Martin assigned the certificate to one Stoelker, who afterward, in the same year, assigned the certificate to A. Campbell Jones, Mrs. Gilmer's son-in-law, who, at the time he received the certificate, was living with his mother-in-law on the premises bought. Jones held this certificate in his possession until April 22, 1890, when he presented it to the probate judge, and obtained a tax deed which described the property as "being situated at the corner of Washington and Bibb streets, the property of Susan W. Gilmer." This deed was duly recorded in the office of the judge of probate of Montgomery county April 22, 1890. The property was sold by the city of Montgomery on regular proceedings for unpaid taxes due the city of Montgomery, and, being described as "the property of Susan W. Gilmer, assessed to her as the east half of lot five, square nine, in that part of the City of Montgomery, known as East Alabama." At this last sale the property was bought by one Martin, who received a deed to the same, and he afterwards conveyed the property to one Stoelker, and Stoelker conveyed the same to A. Campbell Jones. After this, A. Campbell Jones conveyed the property to S. W. Jones (his wife), W. E. Gilmer, R. C. Gilmer, and A. E. Pentecost, all daughters of Susan W. Gilmer, and all of whom before, at the time of the transaction, and afterwards, lived in the house on the premises so conveyed. The last-mentioned deed was executed on the 17th day of June, 1890, and, according to the agreed statement of facts, recorded in the office of the judge of probate of Montgomery county on the 10th of July, 1890. In June, 1890, S. W. Jones, E. E. Gilmer, R. C. Gilmer, and A. E. Pentecost executed and delivered to the Atlanta National Building & Loan Association a mortgage on the property in question for $5,000. Charles Wilkinson, an attorney at law, was the representative of the Atlanta National Building & Loan Association. He negotiated the loan, examined the title, and appears to have acted for it generally as its agent and attorney in arranging and completing the transaction.

In 1892 Susan W. Gilmer filed her bill in the chancery court of Montgomery county against A. Campbell Jones and the four daughters named, but not against the building and loan association, seeking to set aside the tax sales and other conveyances by which her four daughters claimed title to the property in controversy; and such proceedings were had that a decree was rendered setting aside the tax titles and conveyances, so far as the four daughters and A. Campbell Jones were concerned, and ordering a sale of the property, but a reimbursement to Jones and the four daughters of all money paid out for or on account of the property, and a division of the balance of the proceeds among the heirs of Susan W. Gilmer, she having died during the

progress of the chancery suit. At the sale made under this decree the appellant, Dennis, became the purchaser, and has been in possession of the same since the said sale, which occurred in 1897. The decision of the Supreme Court of Alabama on appeal in this chancery suit is reported. Waller, Adm'r, v. Jones et al., 107 Ala. 331, 18 South. 277.

The bill now before the court was filed against J. M. Dennis, Rebecca C. Gilmer, Eleanor E. Gilmer, Susan W. Jones, and A. E. Pentecost. The real issue in the case as made by the answers is between Dennis and the building and loan association. The case was submitted to the Circuit Court (Hon. David D. Shelby, Circuit Judge) who on the 21st of January, 1904 (128 Fed. 293), rendered a decree foreclosing the mortgage against an undivided one-half interest in the property. The reason for foreclosing the mortgage on only an undivided half is shown by the following extract from the opinion of the Circuit Judge: "It is urged in defense of this suit by the solicitors of the only defendant who contests the foreclosure that the mortgage cannot be foreclosed, so far as the interest of Mrs. S. W. Jones and Mrs. A. E. Pentecost is concerned, because they were married women at the time of the execution of the mortgage, and that their husbands did not join in the mortgage as required by the Alabama statute. In reply the solicitor for the complainant, in his brief, says: "It really is not of much importance whether it be held that the mortgage is good or bad as to the two quarter interests of Mrs. Jones and Mrs. Pentecost, because, the property being worth $20,000, a half interest is worth $10,000—more than enough to pay complainants in full—and, as the obligation of the four daughters was joint, each of them, and the property interest of each, is liable for the whole debt." As complainants are content to have the mortgage foreclosed on the interest in the lot vested at the date of the mortgage in the two Misses Gilmer, it is unnecessary to decide whether the mortgage is a valid charge, or not, on the shares of the two married women mortgagors. A decree will be entered foreclosing the mortgage on the one-fourth interest of Eleanor E. Gilmer and on the one-fourth interest of Rebecca C. Gilmer in the lot described in the mortgage."

John M. Chilton, Edgar H. Farrar, B. F. Jonas, and E. B. Kruttschnitt, for appellant.

Thos. H. Watts, for appellees.

Before PARDEE, Circuit Judge, and NEWMAN and MEEK, District Judges.

NEWMAN, District Judge (after stating the facts). We are unable to agree with the conclusion reached by the learned judge who decided this case in the Circuit Court. In the view we have taken of this case, the question raised as to the sufficiency of the description of the property in the tax deed recorded and relied upon here is unimportant. In January, 1892, a bill was brought by Mrs. Susan W. Gilmer and her children not named as defendants against A. Campbell Jones, Susan W. Jones (his wife), Eleanor E. Gilmer, and Annie E. Pentecost, in the chancery court of Montgomery county, Ala. Mrs. Gilmer died pending the suit, and it was prosecuted to a conclusion by her administrator and the other complainants. The suit resulted in an adjudication by the Supreme Court of Alabama (Waller, Adm'r, et al. v. Jones et al., 107 Ala. 331, 18 South. 277) that the title of Mrs. Gilmer to the property in this case had never been divested by the tax sales in question, and that she was entitled to a decree adjudging the property to be hers, subject to the amount expended by Jones and the other defendants for taxes and certain improvements. It being thus determined by the state court that as between her and her son-in-law, Jones, and the

daughters to whom Jones conveyed the property in 1882, Mrs. Gilmer had the title to the property, subject to certain charges, the real question we have to determine is whether or not the complainant here, the building and loan association, could have ascertained this fact by the exercise of proper diligence on its part. No question whatever was made that Mrs. Gilmer lived on the property in controversy. There is some difference as to the character of her occupancy of the property. She was getting old, and had surrendered the active management of the house to her daughters; but she had a room, and occupied it continuously until her death, subsequent to the execution of the mortgage. A tax sale was made and a tax certificate was issued in 1882, and yet Jones, who became the holder of the tax certificate, took no deed to the property from the probate judge until 1890. The amount paid for the property, as set out in the tax deed, was $175; and yet the property was valuable enough to enable the parties to whom Jones conveyed it to obtain a loan on it for $5,000 within a year after the deed from Jones to the ladies was made. This, it seems to us, should have been sufficient to have caused special inquiry on the part of any one about to take a conveyance of the property. The deed from Jones to the ladies, as therein recited, was for $10 and love and affection.

Charles Wilkinson, who was examining the title on behalf of the building and loan association in June, 1891, wrote to the general counsel of that association in Atlanta as follows:

"Enclosed find abstract of Gilmer, Jones property. The tax sale has been critically examined and found perfect. The parties have been holding under the State since 1882. Although the tax deed was made in 1890, the [they] had the certificate. Mrs. Gilmer did not care for it was bought by her son-in-law, deeded by him to his sisters-in-law, the children of Mrs. Gilmer."

This letter shows two things: In the first place, that Wilkinson had the abstract of title and the facts connected therewith, showing how Jones obtained the property, and how it was conveyed by Jones to his wife and her sisters. It also shows that Wilkinson understood that the natural inquiry would be, on the part of any one examining the title, does Mrs. Gilmer still claim to be interested in the property, and what does she say about this loan? The evidence in the case shows conclusively, we think, that, if Mrs. Gilmer had been consulted, it would have ben ascertained that she objected most strenuously to the execution of the mortgage on this property, and that she claimed then, as she did in the suit brought soon thereafter, that she still had the legal title.

Wilkinson, in his testimony, says that:

"At the time of the loan secured by Jones and others in this case, from the complainant, the Atlanta National Building & Loan Association, I was the local representative, adviser, and also secretary and treasurer—id est, Poobah—of said complainant in the city of Montgomery. I had general supervision and advisory powers in reference to any loan, advancement, or the general policy of their business in this territory."

There can be no question, therefore, that whatever knowledge Wilkinson had, and what he might have ascertained by reasonable

inquiry, must be charged to the building and loan association. He stood in such relationship to it in Montgomery as that it is certainly bound by what he knew or could have known.

The law in Alabama applicable to this case (and it is not materially different, as we understand it, from the law elsewhere) is stated by the Supreme Court of that state in Wilson v. Wall, 34 Ala. 288–305, as follows:

"It is well settled that, if the purchaser be put in possession of such facts concerning the title which the vendor offers to sell as would cause a prudent man to inquire further before he would proceed with the purchase, he cannot claim the protection which is accorded to an innocent purchaser without notice. Center v. P. & M. Bank, 22 Ala. 755; McGehee v. Gindrat, 20 Ala. 101. Information which makes it the duty of a party to make inquiry, and shows where it may be effectually made, is notice of all facts to which such inquiry, if conducted with ordinary diligence and prudence, would have led. Carr v. Hilton, 1 Curt. 390 [Fed. Cas. No. 2,437]; [Williamson v. Brown] 1 Smith (N. Y.) 354; Ringgold v. Bryan, 3 Md. Ch. 488; Wilson v. McCullough, 23 Pa. 440 [62 Am. Dec. 347]; Kennedy v. Green, 3 Md. & K. 699. A purchaser has notice of what appears upon the face of every title deed which constitutes a necessary link in his chain of title, and will not be allowed to deny notice by asserting that he had not read the deed. Johnson v. Thweatt, 18 Ala. 747; Wailes v. Cooper, 24 Miss. 208; Tiernan v. Thurman, 14 B. Mon. 277."

See, also, Hodges Bros. v. Coleman & Carroll, 76 Ala. 103–113. To the same effect is the decision in Lockwood v. Tate, 96 Ala. 353–356, 11 South. 406. In the opinon in this last case it is said:

"Information which makes it the duty of a party to make inquiry, and shows where it may be effectually made, is notice of all facts to which such inquiry, if conducted with ordinary diligence and prudence, would have led. Hodges v. Coleman, 76 Ala. 113; 2 Brick. Dig. p. 520, § 183. Good faith is an essential element of a valid claim to protection as a purchaser without notice, and lack of good faith is to be imputed to one who, having such information as would put a prudent man on inquiry, failed to pursue the inquiry, which, if diligently followed up, would have led him to a knowledge of the superior right of another. Taylor v. Agricultural & M. Ass'n, 68 Ala. 229; Whelan v. McCreary, 64 Ala. 319; Craft v. Russell, 67 Ala. 9; Barton v. Barton, 75 Ala. 400."

The property in controversy in this case at the time of this transaction must, from the evidence in the record, have been worth something like $10,000—at least that much. Counsel for complainant admits, as stated by Judge Shelby in his opinion, that it was worth last year $20,000; and, as the loan was made on it for $5,000, we may reasonably admit, in view of the margin usually required in loans of this character, that it was worth considerably more than the amount of the loan. The title which the complainant accepted was a tax deed made to the son-in-law of the owner eight years after the tax sale was made, in consideration of $175, and the subsequent conveyance to the daughters for $10 and love and affection. We are unable to understand how any one in the exercise of reasonable diligence in examining the title to this property before making a loan on it would not have most carefully questioned Mrs. Gilmer as to her interest. We think the facts were sufficient to put Wilkinson, as the representative and attorney of the building and loan association, on inquiry of Mrs. Gilmer. If Wilkinson had made this inquiry, it would have elicted facts and information from

Mrs. Gilmer which would undoubtedly have caused him to decline the loan for the building and loan association, if he properly regarded its interests.

Mr. Wilkinson was a witness in behalf of the complainant in this case, and at one point in his testimony he says this:

"It was never brought to my notice, incidentally, inferentially, or otherwise, that Susan W. Gilmer or any other person whatsoever had any claim, right, interest, equity, legal or otherwise, in and to said property, conveyed by said mortgage, other than said mortgagors mentioned. My best recollection is that at the time of the execution of said mortgage said Susan W. Gilmer was living with said mortgagors."

Afterwards in his testimony he makes this statement:

"I do not state positively that I ever had any exclusive or personal conversation with Mrs. Gilmer, although I remember distinctly going to the residence and seeing the parties generally in reference to this loan. I went down there myself. While it is true that I do not remember (it being several years anterior to the present) of a personal conversation with Mrs. Gilmer, still, as a basis of my recollection on the letter that I have just read, I must and will state that I do not believe that I would have written the letter of date 8th April, 1891 (Exhibit E) unless I had had a conversation with Mrs. Gilmer upon which to predicate said letter; and, as refreshed by said letter, I am of opinion that such conversation, the concrete of which is included in said letter, was had between me and the said Susan W. Gilmer."

In view of what this record shows Mrs. Gilmer's attitude to have been all along as to the transaction in question here, we do not think this evidence sufficient to show that Mrs. Gilmer was informed of the purpose of her daughters to mortgage the property, or had any notice of it when it was done.

While the agreed statement of facts concedes that the tax deed from the city of Montgomery was recorded in the office of the probate judge, it is not set out in the abstract of title furnished by Wilkinson to the building and loan association, and could not have been relied upon by the association in making the loan. Even if it had been so set out and relied upon, it would not have materially strengthened the complainant's case, as we regard it.

We put our decision in this case upon two grounds: First, that the legal title to the property in question at the time the mortgage to complainant was executed was, as between Mrs. Gilmer and the mortgagors, in Mrs. Gilmer, as determined by the Supreme Court of Alabama; second, that the facts shown in the record were such as to have made it incumbent on the representative of the building and loan association to have made inquiry of Mrs. Gilmer as to her interest in the property in question, and that any reasonable inquiry would have informed him of the real situation as it was afterward determined in the state court.

The decree of the Circuit Court must be reversed, and the case remanded, with directions to dismiss the bill, with costs against the complainant.