### FIRST NAT. BANK OF SHEFFIELD et al. v. TOMPKINS.

(Circuit Court of Appeals, Fifth Circuit. May 22, 1893.)

No. 109.

1. VENDOR'S LIEN — NOTICE — INNOCENT PURCHASER — NOTICE TO A BANK — KNOWLEDGE OF PRESIDENT.

Where a bank acquires title to real estate by conveyance from its president, who held the land under a deed reciting full payment of the purchase money, and it has no actual knowledge that the purchase money was not in fact paid, it is an innocent purchaser without notice, and is not chargeable with constructive notice because of the knowledge of its president.

2. SAME—NOTICE—WHAT CONSTITUTES.

A conversation by a grantor with a director of a bank, in which the former states that he is willing to convey a half interest in certain land to the president of the bank, with the understanding that such president was to deed the whole interest to the bank, and that the president or the bank was to pay him by giving him credit upon notes then running against him in the bank, does not amount to notice to the director that the grantor intends to retain a vendor's lien, but rather imports a notice that no such lien is to be retained.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Alabama.

In Equity. Bill by Henry B. Tompkins against the First National Bank of Sheffield, Ala., and Charles D. Woodson to enforce and foreclose a vendor's lien. Defendant Woodson having died pending the suit, Richard W. Austin, administrator, was substituted in his stead. Decree for complainant. Defendants appeal. Reversed.

David D. Shelby, for appellants.

R. C. Brickill, (Brickill, Semple & Gunter, on the brief,) for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and TOULMIN, District Judge.

PARDEE, Circuit Judge. On the 15th December, 1889, the appellee filed a bill in the circuit court against the appellants to

enforce and foreclose a vendor's lien on one undivided half interest in and to lots numbered 13 and 14, block No. 62, on Montgomery avenue, in the city of Sheffield, county of Colbert, in the state of Alabama; and therein alleged that, being the owner in full fee simple of said one undivided half interest, he did, on the 5th April, 1887, or some date subsequent thereto, execute a deed to said one undivided half interest to Charles D. Woodson, then president of the First National Bank of Sheffield, with the understanding and agreement that said two lots were to be deeded by said Woodson to said bank; that the price to be paid therefor was, as expressed in said deed, $4,000; that no part of said purchase price of said interest was ever paid by said Woodson or by said bank; that the said Woodson, as president of said bank, acting for and by authority of the board of directors of said bank, had full knowledge, as did said bank itself, that the purchase was made by Woodson for the bank; that the purchase money has never been paid, in whole or in part; that no note was taken for said purchase price of $4,000, because it was understood and agreed that it was a cash transaction, and that the purchase price would shortly be paid, with interest at 8 per cent. per annum; that the deed dated the 5th April, 1887, was not actually acknowledged and delivered until the 23d of October, 1888. It was further alleged in said bill that on the 6th day of April, 1888, said Woodson, who held title to the other one undivided half interest in said two lots, deeded the whole interest in said lots to the bank, and that at the time said bank accepted the deed said Woodson, the president of the bank, as well as the bank itself through its proper officers and board of directors, had actual knowledge or were put upon legal notice that the said undivided one-half interest had not been paid for in whole or in part; and, further, that he, Tompkins, is not now indebted to said Woodson or to said bank in any sum whatever. The prayer of the bill was for a decree subjecting the undivided half interest in said two lots to the payment of the vendor's lien. Discovery under oath from the defendants was expressly waived.

To the bill, Charles D. Woodson answered, admitting the conveyance and the price, but denying that no part of the price was paid to complainant by defendant. On the contrary, he says:

"The full amount of said purchase price, to wit, four thousand dollars, ($4,000.00,) was by this defendant paid to and received by complainant before said deed was made, or was by defendant paid out on complainant's account at his instance, or upon his request before that time; and when said deed was made defendant was not indebted to the complainant in the sum of four thousand dollars on account of the purchase of said interest in said two lots, or in any sum at all."

Defendant Woodson further admitted that he was the president of said bank, and so remained until the 30th day of November, 1889, when it went into the hands of a receiver, to be wound up as provided by the laws of the United States. The said answer denies that in making the purchase Woodson acted for, or by authority of, the bank, or for its board of directors, or that the bank

had full knowledge or any knowledge of defendant's action in the premises; and he says that the purchase was entirely an individual matter between complainant and the defendant, with which the bank or its board of directors had nothing whatever to do. But when he conveyed said lots to the bank he stated to its board of directors that said purchase money had been fully paid, and that he conveyed to them the unincumbered fee-simple title to said lots, and said bank had no knowledge or notice of any claim thereon of complainant, and, in fact, complainant had no claim on said lots at that time, nor since; and he avers that the complainant now owes the bank more than $7,000, money borrowed by him from said bank since the said deed was made, for which he executed his notes, which notes are unpaid, and which are now held by the said bank or its receiver.

The bank answered, admitting that the complainant owned at one time a one-half interest in the property described in the bill; the conveyance to Charles D. Woodson; that Woodson was the president of the bank, and had conveyed the whole property to the bank, but alleged full payment of the purchase money to complainant before the deed was put to record; that the deed from complainant to Woodson was the only evidence and information which was presented to the bank of the ownership of the undivided half interest sued for, and the board of directors relied upon the recitals of the deed from complainant to said defendant as being true, and that at the time of the purchase from Woodson of the lots, which were for the purpose of erecting a bank building, the bank did not have any notice or information of any character whatever of any unpaid balance of purchase money upon the property in question; that Woodson assured the directors at the time the bank purchased the property that the recitals of the deed made by the complainant to him were true, that the entire purchase money was settled and paid. Further answering, the bank says that at the time the said Woodson made and executed his deed to the bank the bank paid said Woodson $5,000, as is stated in said deed, and had no knowledge or information or notice of any outstanding title, equity, or adverse interest of any kind or description; and there was no fact within the knowledge of the bank which could or did put the bank on inquiry as to the title to said property, and the bank relied on, and was entitled to rely on, the bona fides of the record of the deed from the complainant to said Woodson and from said Woodson to the bank.

On final hearing in the circuit court, a decree was rendered in favor of the complainant, recognizing his lien on the lots in question to secure the payment of $4,000, with interest thereon, aggregating $5,813.33, and ordering the bank to pay said sum, with interest and costs, within a short day, and, in default thereof, that the undivided half interest in the property be sold by a special master to pay the same. From this decree the First National Bank of Sheffield and R. W. Austin, administrator of the estate of Charles D. Woodson, deceased, appealed to this court, assigning errors as follows: (1) In decreeing complainant was entitled to the relief prayed for in the

bill; (2) in decreeing that the defendant had a vendor's lien on the real estate described in the bill and in the decree; (3) in decreeing that the defendant Woodson was indebted to the complainant in the sum of $5,813.33 and interest thereon; (4) in failing to render decree dismissing the bill; (5) in not holding and decreeing that the purchase money sued for had been paid; (6) in not holding that the defendant bank was an innocent purchaser of said real estate described in the bill for value and without notice of complainant's claim.

The view we take of the facts in the case as shown by the evidence renders it unnecessary to consider any of the errors assigned except the last. It is undisputed that on the 23d October, 1888, Tompkins, by warranty deed, conveyed to Charles D. Woodson his undivided half interest in and to the lots in question, and therein recited that it was "for and in consideration of the sum of four thousand (4,000) dollars cash, in hand paid by C. D. Woodson, of Colbert county, Alabama, the receipt whereof is hereby acknowledged, have this day bargained, sold," etc.; that by warranty deed acknowledged and delivered on the 13th day of December, 1888, C. D. Woodson, for and in consideration of $5,000, paid by the First National Bank of Sheffield, conveyed the whole of the two lots in question to the First National Bank of Sheffield, and that the consideration named in the last-mentioned deed was paid in cash. The case shows that the bank had no notice of the transaction between Tompkins and Woodson save what was contained in the deed from Tompkins to Woodson, unless the bank was chargeable with notice by reason of the fact that Woodson was president of the bank.

It is true that the complainant testifies that a few days prior to the delivery of his deed to Woodson he had a conversation with James R. Crow, at that time a director in said bank, in which he told said Crow that he was willing to make a deed to Woodson, with the understanding that Woodson had already deeded, or was to deed, the whole interest in the lots to the bank; that he was to make a deed for the consideration of $4,000; and that Woodson was to pay him, or the bank was to do so, by giving him credit for that amount upon the notes then running in his name in said bank. If this evidence of the complainant is given full force, it cannot be taken as giving any notice to Director Crow, much less to the bank, with regard to any intention of the complainant to retain a vendor's lien on the property thereafter to be conveyed. It rather imports a notice that no vendor's lien was to be retained. In Bayley v. Greenleaf, 7 Wheat. 51, Chief Justice Marshall said:

"To the world the vendee appears to hold the estate divested of any trust whatever, and credit is given to him in the confidence that the property is his own in equity as well as in law. A vendor relying upon his lien ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is in some degree accessory to the fraud committed on the public by an act which exhibits the vendee as a complete owner of an estate on which he claims a secret lien. It would seem inconsistent with the principles of equity and with the general spirit of our laws that such a lien should be set up in a court of chancery to the exclusion of bona fide creditors."

And in that case the court held that a vendor could not enforce his lien for unpaid purchase money against trustees for the creditors of the vendee to whom the land has been conveyed without notice of the lien. The supreme court of Alabama has decided in many cases that the vendor's lien will not prevail against bona fide purchasers paying the purchase money without notice. Burch v. Carter, 44 Ala. 115; Scott v. Griggs, 49 Ala. 185; Hudgens v. Cameron, 50 Ala. 379; Lambert v. Newman, 56 Ala. 623; Thurman v. Stoddard, 63 Ala. 336; Ware v. Curry, 67 Ala. 274. In the case of Whelan v. McCreary, 64 Ala. 319, Mr. Chief Justice Brickell, speaking for the court, declares the law of Alabama as follows:

"Whoever gives value, or enters into transactions by which his position is materially changed, and from which change loss must ensue, on the faith that the vendor of real estate, or person with whom he deals, has, as the title papers exhibit, a clear, legal title, will be protected against outstanding and latent equities, of which he has no notice. A mortgagee taking a security for a contemporaneous loan or advance falls within the rule, and is entitled to protection. Boyd v. Beck, 29 Ala. 713; Wells v. Morrow, 38 Ala. 125. The only notice, actual or constructive, of Mrs. Whelan's equity, which is attributed to the insurance company, is imputed, because notice, it is insisted, is traced to Williams, one of the directors, active and instrumental in making the loan to Cunningham and McCreary, and taking the mortgage. Whatever facts may have been known to Williams which ought to have excited inquiry on his part came to his knowledge while he was acting as the agent of Cunningham, in a transaction in which the insurance company had no interest. The rule is settled in this state that a corporation will not be affected by notice which one of its directors or other officer may have received when not acting for the corporation, but in the transaction of his own private affairs, and under such circumstances that its communication to other officers of the company is not to be expected. Terrell v. Bank, 12 Ala. 502. If the facts were stronger for the imputation of notice to Williams than are found in the record, notice could not be imputed to the insurance company."

The case of Barnes v. Gaslight Co., 27 N. J. Eq. 33–37, involved a question with regard to notice very similar to the case in hand, and the chancellor held as follows:

"That the defendants are bona fide purchasers for valuable consideration is not denied. Their title is not impugned, except on the ground of notice, and the claim to relief is based on the allegation that at the time when the conveyance was made by Mr. Potts to them he was their president, and this fact is relied upon as of itself sufficient to establish notice to them of all the facts which the bill charges were within his knowledge. The general proposition is undoubtedly true that notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from, or is at the time connected with, the subject-matter of his agency. The rule is based on the presumption that the agent has communicated such facts to the principal. Story, Ag. § 140. On principles of public policy the knowledge of the agent is imputed to the principal. But the rule does not apply to a transaction such as that under consideration; for, in such a transaction, the officer, in making the sale and conveyance, stands as a stranger to the company. Stratton v. Allen, 16 N. J. Eq. 229. His interest is opposed to theirs, and the presumption is, not that he will communicate his knowledge of any secret infirmity of the title to the corporation, but that he will conceal it. Where an officer of a corporation is thus dealing with them in his own interest, opposed to theirs, he must be held not to represent them in the transaction, so as to charge them with the knowledge he may possess, but which he has not communicated to them, and which they do not otherwise possess, of facts derogatory to the title he conveys."

—Citing, in support of the same, Bank v. Cunningham, 24 Pick, 270; Kennedy v. Green, 3 Mylne & K. 699; In re European Bank, L. R. 5 Ch. App. 358; In re Marseilles Extension Railway Co., L. R. 7 Ch. App. 161; Ang. & A. Corp. 8; Winchester v. Railroad Co., 4 Md. 231. To the same effect, see 1 Mor. Priv. Corp. (2d Ed.) § 540; 1 Morse, Banks & Banking, § 104.   As, when the bank bought the property, the record showed a perfect title in Woodson, with the purchase price fully paid, and as the bank had no actual notice of outstanding secret equities, and was not charged with constructive notice of any such equities because of any knowledge of Woodson, its president, of whom it acquired the property, it follows that the bank was an innocent purchaser without notice, and, as such, acquired the property divested of any vendor's lien which may have existed in favor of Tompkins as against Woodson.   For this reason the decree of the circuit court should be reversed, and the case remanded, with instructions to dismiss the bill, with costs, and it is so ordered.