LEVY & COHN MULE CO. v. KAUFFMAN.

KAUFFMAN v. LEVY & COHN MULE CO.

Circuit Court of Appeals, Fifth Circuit.  February 25, 1902.)

No. 1,097.

1. BILLS AND NOTES—TRANSFER—CONSIDERATION.
   The cancellation of a pre-existing debt is equally as valid and suffi-
   cient consideration for the transfer to the creditor of a bill or note of
   a third party as a payment of cash therefor.

2. SAME—ACCOMMODATION MAKER—DEFENSES.
   An acceptor of drafts for the accommodation of the drawer cannot de-
   fend against the same in the hands of the payee or an indorsee, on the
   ground that he received no consideration, where full consideration was
   received by the drawer.

3. SAME—CONSIDERATION—ACCOMMODATION—ACCEPTANCE OF DRAFTS.
   The purpose inducing one to accept drafts as an accommodation to the
   drawer does not constitute the legal consideration for his contract, and
   the fact that such purpose was not accomplished cannot be pleaded as
   a failure of consideration.

4. SAME—ACTION ON ACCEPTANCE—EVIDENCE OF PAROL AGREEMENT.
   Evidence of a parol agreement made before or at the time of the ac-
   ceptance of drafts is inadmissible to vary the absolute terms of the
   written contract made by the acceptance by showing that the acceptance
   was conditional.

5. CORPORATIONS—NOTICE—KNOWLEDGE OF OFFICER.
   The payee of accepted drafts, for the purpose of realizing on the same
   for the benefit of the drawers, indorsed them to a corporation of which
   he was president, and the amount was placed by the corporation to the
   credit of the drawers, and paid out by their orders, prior to the maturity
   of the drafts. Held, that in making transfer of the drafts the president
   was not acting for the corporation, but adversely, and the corporation
   was not affected by any knowledge he might have of an infirmity in the
   paper.

In Error and Cross Error to the Circuit Court of the United States
for the Eastern District of Texas.

This is an action at law by the indorsee against the acceptor of three
bills of exchange. It was brought in the court below by the Levy & Cohn
Mule Company, a corporation under the laws of Missouri, against Henry
Kauffman, a citizen of Texas. The drafts in suit were for $5,000 each,
drawn March 10, 1899, by Joseph Weill & Co., of New Orleans, on the
defendant, and by him accepted. They were payable to the order of Jacques
Levy, and were by him indorsed to the plaintiff before maturity. The pe-
tition described the drafts, and was in due form. The answer of the de-
fendant presented three defenses: (1) That the acceptance of the drafts
was procured by fraud, and that they were fraudulently used. As no rul-
ing of the court below is before us on this plea, and no evidence of fraud
on the part of the plaintiff, no further attention will be given to this de-
fense. (2) Failure or want of consideration. (3) The third defense pleads
an oral contract made contemporaneously with the acceptance of the drafts.
It will be stated with immaterial abbreviations in the language of the an-
swer:

"That at the time he accepted the said bills in the month of March, 1899,
Joseph Weill, Armand Levy, and Daniel Weill were copartners in a busi-
ness carried on in New Orleans, under the style of Joseph Weill & Com-
pany. That Joseph Weill was the son-in-law of this defendant, and Armand
Levy the nephew of Jacques Levy. That the said firm were greatly em-
barrassed financially,—had reached such a point that as a firm they could

no longer go on with their business unless some help was obtained from some outside source, as their credit in New Orleans had been exhausted.—and that, being in this condition financially, Armand Levy applied to his uncle, Jacques Levy, the president of the Levy & Cohn Mule Company, for some financial assistance; and that the firm of Joseph Weill & Company at that time was indebted to the Levy & Cohn Mule Company (the plaintiffs), and Jacques Levy replied (all of which the said Levy & Cohn Mule Company, the plaintiffs, were fully advised) that he would advance Joseph Weill & Company fifteen thousand dollars in addition to what Joseph Weill & Company then owed the Levy & Cohn Mule Company, provided that Henry Kauffman, this defendant, would advance an equal amount, thereby enabling Joseph Weill & Company to have an amount of thirty thousand dollars to be put into their business, to be used in making a crop of sugar on certain plantations which they were then operating in Louisiana. This defendant replied that if the said Jacques Levy, acting for himself and for the said Levy & Cohn Mule Company, would advance the firm of Joseph Weill & Company fifteen thousand dollars, that he would accept three drafts of five thousand dollars each, in favor of Jacques Levy, to be drawn by Joseph Weill & Company, payable at a certain time, as is stated in the three bills of acceptance declared on in this action, provided the said Jacques Levy would discount or have discounted the three certain acceptances, and turn over the proceeds of said acceptances in cash to Joseph Weill & Co., with the fifteen thousand dollars additional money to be advanced to the said firm by the said Jacques Levy for himself and the said Levy & Cohn Mule Company, all of which was fully agreed to; it being understood, not only by this defendant, but by the said Jacques Levy and the Levy & Cohn Mule Company, that the said sum of thirty thousand dollars was absolutely necessary to be used in the business of Joseph Weill & Company in cash, in order that they might live through the financial difficulties which surrounded them and make and gather the crops on the several sugar plantations operated by them. That the sole inducement to this defendant to enter into these transactions and to accept these drafts, which he honestly proposed and intended to do when such acceptances matured, had the said Jacques Levy and the Levy & Cohn Mule Company carried out their contract and agreement to advance Joseph Weill & Company fifteen thousand dollars as well as the proceeds of the three bills of acceptance of this defendant which Jacques Levy and plaintiffs were to have discounted, was not only to aid his son-in-law, but also the firm of Joseph Weill & Company, through the financial difficulties which then threatened to wreck them, because this defendant was a large creditor of the firm of Joseph Weill & Company, and because he well knew that the failure of Joseph Weill & Company would involve him in much loss. That after the said three drafts of Joseph Weill & Company, in favor of Jacques Levy, for five thousand dollars each, had been accepted, the same was turned over to Joseph Weill & Company, to be by them transmitted in due course of mail to Jacques Levy to be discounted, and the proceeds thereof to be paid to Joseph Weill & Company, together with the fifteen thousand dollars additional. That said three acceptances were received by the said Jacques Levy within a few days after their execution. That instead of being discounted, as was agreed upon, and the proceeds remitted or paid over to Joseph Weill & Company, the said Jacques Levy indorsed and transferred said three bills of acceptance over to the Levy & Cohn Mule Company as a credit, and passed the same to the credit of Joseph Weill & Company with the Levy & Cohn Mule Company in part settlement and satisfaction of an antecedent debt due by Joseph Weill & Company to the Levy & Cohn Mule Company."

The case was tried on these issues. The plaintiff offered in evidence the accepted drafts and rested; and thereupon it was proven by defendant, examined as a witness in his own behalf, and by Joseph Weill, a member of the firm of Joseph Weill & Co., also examined as a witness for defendant, that the said accepted drafts were drawn by Joseph Weill & Co., accepted by defendant, indorsed by Jacques Levy, and before maturity negotiated with plaintiff for account of Joseph Weill & Co., and the proceeds

thereof paid and applied by plaintiff as directed by Weill & Co., and for their account, as follows:

To take up a draft of plaintiff on Joseph Weill & Co. (drawn to reimburse plaintiff for that amount paid out by it for accommodation of Joseph Weill & Co.), and recalled by plaintiff at request of Joseph Weill & Co. .......................$ 5,500 00

To pay a draft of Joseph Weill & Co. drawn on plaintiff for...  2,000 00

To pay another draft drawn by Joseph Weill & Co. on plaintiff for ...........................................  2,500 00

To pay another draft of Joseph Weill & Co., on plaintiff in favor of defendant, H. Kauffman (and used by Kauffman to take up and pay a draft for $5,000.00 drawn by Joseph Weill & Co. on and accepted by him, H. Kauffman, for accommodation of Joseph Weill & Co.).......................  5,000 00

Aggregating the entire amount of the acceptances...... $15,000 00

All of these payments were made before maturity of any of the acceptances sued on. It was also proved that plaintiff advanced to Joseph Weill & Co. $3,175 in addition to these payments, about the same time that these sums were paid. The defendant then offered evidence tending to prove the facts averred in his third defense. When evidence was offered of the oral agreement therein alleged, the plaintiff objected on several grounds stated, among them the following: "The acceptances sued upon are written contracts of defendant to pay the sums of money therein mentioned. absolutely and without condition, and it is not competent by oral testimony to show any agreement, condition, or understanding, contemporaneous or previous, whereby such written absolute contracts may be varied or qualified, so as to make their performance depend upon either the making or performance of such oral agreement, condition, or understanding." The objections were overruled, and the plaintiff excepted. Evidence was offered in rebuttal by the plaintiff, tending to show that no such agreement was made as that alleged by the defendant in the third defense. It is unnecessary to state this evidence.

On the question of the consideration of the drafts and on the alleged agreement, the court charged the jury as follows: "In this case the evidence shows that the Levy & Cohn Mule Co. paid $15,000 on the acceptances, and it is also shown that the Levy & Cohn Mule Co. paid $3,175 additional. The view I take of the law in this case is different from that argued by either side. I do not agree with either of them. One of them contends that the defendant has no defense whatever, and the other contends that it is a complete defense. I don't agree with the contention of either one of them. Under the pleadings and proof in this case, if it means anything, it means that Mr. Jacques Levy and Mr. Kauffman—that is, according to Mr. Kauffman's contention—were to advance $15,000 each. The proof unquestionably shows that the Levy & Cohn Mule Co. and Jacques Levy advanced $18,175. Now, under the contention of Mr. Kauffman, he would have been owing to the Levy & Cohn Mule Co. $15,000, conditioned that the full $15,000 had been advanced in addition to his acceptances. I cannot take any other view of this case than this: In view of the fact that the proof shows that Mr. Kauffman received $5,000 of the money, in that the draft was drawn in his favor, and he applied it to a debt that he was the indorser of Jos. Weill & Co. on, I cannot look upon it as anything more than a partial failure of consideration. If you find from the evidence that this agreement was not authorized by Jacques Levy, return a verdict for the plaintiff in the full amount of the acceptances. If you find that it was authorized, and that Mr. Kauffman acted upon the authority, then you are instructed to return a verdict in this case for plaintiff for one-half the money he advanced, which, under the evidence, was $18,175." The plaintiff duly excepted to this charge. The jury found a verdict for the plaintiff for $9,087.50, interest to be added, on which judgment was entered. The plaintiff sued out a writ of error, and contends that it is entitled to a verdict for the full amount of the drafts in suit, and that the court erred in the instructions quoted. The defendant,

Henry Kauffman, sued out a cross writ of error, and assigns error, contending that he is not liable on the drafts at all. Under rule 25 of this court (31 C. C. A. clxvi., 90 Fed. clxvi.), both writs have been heard together.

J. H. Z. Scott (Frank M. Spencer, on the brief), for plaintiff in error and cross defendant in error.

Benjamin Rice Forman and Maco Stewart, for defendant in error and cross plaintiff in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

There is no conflict in the evidence on the question of the consideration of the contracts sued on. The drafts were drawn by Joseph Weill & Co. in favor of Jacques Levy on H. Kauffman. Kauffman accepted the drafts by writing his name across each of them. He did not owe the drawers, and had no funds of theirs in his hands. He was an accommodation acceptor, lending his name to the drawers to enable them to raise money. Before the maturity of the drafts they were indorsed by the payee to the plaintiff for the account and benefit of Joseph Weill & Co. for $15,000, the face value of the drafts. By the direction of Joseph Weill & Co., $10,000 of the proceeds of the drafts was applied to the payment of their past-due debts to the Levy & Cohn Mule Company, and $5,000 to the payment of their debt to H. Kauffman. The bills sued on, therefore, cost the plaintiff $15,000, placed subject to the order of Joseph Weill & Co. But as part of this sum came back to or never really left the plaintiff's possession, the real transaction is stated more favorably to the defendant in this way: The plaintiff obtained possession and title to the drafts by paying $5,000 in discharge of a debt which Joseph Weill & Co. owed H. Kauffman, and canceling and discharging past-due debts for $10,000 which Joseph Weill & Co. owed plaintiff. The application of the fund in both instances was by the direction of Joseph Weill & Co. On the question of consideration there is no difference in receiving a negotiable bill or note before maturity in payment of a pre-existing debt, and in paying cash for it. This is the conclusion of the best-considered and most numerous state authorities (1 Daniel, Neg. Inst. [4th Ed.] § 184), and is the doctrine unquestionably settled by the supreme court (Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Brooklyn City & N. R. Co. v. National Bank of Republic, 102 U. S. 14, 26 L. Ed. 61; 4 Rose, Notes on U. S. Rep. 133). And a pre-existing debt "is equally as valid and sufficient consideration for the indorsement and transfer to the creditor of the bill or note of a third party. * * *" 1 Daniel, Neg. Inst. (4th Ed.) § 184. The fact that Kauffman, the accommodation acceptor of the bills, did not receive the benefit of $10,000 of the bills, does not affect the case. He did get the benefit of $5,000 of the proceeds of the negotiation of the bills; but, if he had received nothing, the bills would have been valid in the hands of the plaintiff. The evidence in the case and the nature of the transaction show that it was not contemplated that the consideration for the sale of the drafts was to go to Kauffman. The parties to every accommodation note or bill by their signatures hold themselves bound to every person who shall take

the same for value, to the same extent as if that value were personally paid "to them, or on their account and at their request." Story, Prom. Notes (6th Ed.) § 194; Townsley v. Sumrall, 2 Pet. 170, 7 L. Ed. 386. It is for the benefit and convenience of the commercial world to encourage as far as practicable the credit and circulation of negotiable paper. Accommodation bills are daily placed in market for discount and sale, and an indorsee or purchaser who knows that a bill or note "still current was drawn, made, accepted, or indorsed without consideration is as much entitled to recover as if he had been ignorant of the fact." 1 Daniel, Neg. Inst. (4th Ed.) § 790, and cases there cited. Want of consideration to the accommodation acceptor or indorser will constitute a good defense against the party for whose accommodation it is made,—as, in this case, if Joseph Weill & Co. were suing Kauffman,—but to allow such defense to defeat a recovery by an indorsee for value, who has advanced money on it, "would be to defeat the very purpose for which such paper is made, and render the transaction absurd." Thatcher v. Bank, 19 Mich. 196, 202.

When Kauffman accepted the bills, he authorized the plaintiff or any one to receive them on the credit of his name, and the consideration paid by the plaintiff for them was in law paid by his direction and order. Kauffman's defense on the question of consideration is that he accepted the drafts in suit because he was the father-in-law of Joseph Weill, and a large creditor of Joseph Weill & Co., and so interested in relieving that firm of financial embarrassment; and that for these reasons, and on the promise of Jacques Levy, for himself and the plaintiff, to advance $15,000 for the relief of Joseph Weill & Co., he (Kauffman) accepted the drafts in suit. The contention is that the advance of $15,000 by Jacques Levy to Joseph Weill & Co. was to be the consideration for the acceptances by Kauffman, and that, as this advance was not made, the acceptances are without consideration. These mixed motives that induced Kauffman to accept the drafts cannot be separated and all eliminated but the promise of Jacques Levy, so as to hold that his failure to comply with his promise changed Kauffman's relation to the drafts from that of an accommodation acceptor to that of an acceptor for a consideration. The undisputed facts show a full consideration proceeding from the plaintiff for its ownership of the drafts. The facts, therefore, averred by Kauffman of his relationship to Joseph Weill as kinsman and as creditor of Joseph Weill & Co., and the alleged agreement of Jacques Levy, must be considered, not as consideration for the acceptance by him of the drafts, but as motive or inducement causing him to accept them. "There is a clear distinction sometimes between the motive that may induce to entering into a contract and the consideration of the contract. Nothing is consideration that is not regarded as such by both parties. It is the price voluntarily paid for a promisor's undertaking. An expectation of results often leads to the formation of a contract, but neither the expectation nor the result is 'the cause or meritorious occasion requiring a mutual recompense in fact or in law.'" Philpot v. Gruninger, 14 Wall. 570, 577, 20 L. Ed. 743; Morris v. Norton, 21 C. C. A. 553, 75 Fed. 912, 926; Colorado Co. v. Stratton (C. C.) 95 Fed. 741, 744; Association v. Wickman, 141 U. S. 564, 579, 12 Sup.

Ct. 84, 35 L. Ed. 860. It follows that in the record there is no evidence of entire or partial failure of consideration.

The defendant, Kauffman, by answer claims that there should be no recovery in this suit because Jacques Levy failed to comply with an oral agreement, made by him when the defendant accepted the bills, that he (Jacques Levy) would not only procure the bills to be discounted, but would himself advance to Joseph Weill & Co. $15,000, so that the latter would have $30,000 to aid them in their financial troubles. When oral evidence was offered tending to prove this agreement, the plaintiff duly objected to it, and reserved an exception to its admission. Part of the charge of the court to which exceptions were reserved was based on this alleged contract, and the verdict of the jury indicates by its amount that it is founded on this oral agreement. When Kauffman accepted the bills he became the primary debtor. 1 Daniel, Neg. Inst. § 532. Although he wrote nothing but his name, the acceptance was a shorthand contract in writing, and is fully protected by the familiar and fundamental rule that oral evidence will not be received to vary its terms. Martin v. Cole, 104 U. S. 30, 37, 26 L. Ed. 647. The contrary has been held by some courts, and notably by Mr. Justice Washington in Bridge & Bank Co. v. Evans, 4 Wash. C. C. 480, Fed. Cas. No. 13,635; but the latter case was expressly rejected in Bank v. Dunn, 6 Pet. 51, 8 L. Ed. 316. Since the decision of the supreme court in the case last cited in 1832 it has been the rule of that court, approved and followed by the weight of state authorities, that evidence cannot be received of a contemporaneous parol agreement to vary the written contract of acceptance or indorsement of negotiable paper. Martin v. Cole, 104 U. S. 30, 26 L. Ed. 647. In a suit by payee against drawer of a bill of exchange, parol evidence of an agreement not to present the draft until defendant should provide for a previous draft was rejected. Brown v. Wiley, 20 How. 442, 15 L. Ed. 965. In Specht v. Howard, 16 Wall. 564, 21 L. Ed. 348, in a suit by the indorsee against the indorser of a note silent as to the place of payment, parol evidence was rejected that there was an agreement between the maker and the indorsee that it should be made payable in New York. The court said with reference to the agreement that it was a nullity, and could not in any wise affect the rights of either of the parties, and quoted 2 Pars. Notes & B. § 501: "It is a firmly settled principle that parol evidence of an oral agreement alleged to have been made at the time of the drawing, making, or indorsing of a bill or note cannot be permitted to vary, qualify, or contradict, to add to or subtract from, the absolute terms of the written contract." In Forsythe v. Kimball, 91 U. S. 291, 23 L. Ed. 352, the same rule was applied in equity. Parol evidence of the agreement which Kauffman pleads would not be admissible in litigation between Kauffman, as acceptor, and Joseph Weill & Co., as drawers, of the bill. It would be excluded upon the familiar rule already quoted. A collateral written agreement, however, is admissible in an action on an acceptance between the original parties. In a case where such an agreement was in writing the court said: "The agreement, being in writing, is to be taken and considered in connec-

tion with the indorsement, and the two are to be construed together." Davis v. Brown, 94 U. S. 423, 427, 24 L. Ed. 204.

It appears to be settled by the decisions of the supreme court that a relevant contemporaneous written agreement is admissible in evidence in an action on notes or bills between the original parties, but not admissible against an indorsee without notice for value, and that evidence of an oral agreement is not admissible in either case. In asserting the agreement as a defense, Kauffman merely claims that his acceptance was upon condition that Jacques Levy was also to advance $15,000 to Joseph Weill & Co., so that with the proceeds of the accepted bills they would have $30,000. It is a familiar principle that any conditions which are annexed to a written acceptance must appear on its face. It is true that the acceptance may be rendered conditional by another contemporaneous writing; but even then such condition would have no effect against a bona fide holder ignorant of it. It follows from the principles established by the decisions already quoted that "the terms of an acceptance in writing cannot be varied by any contemporaneous parol agreement, as that is against the first principles of the law of evidence." 1 Daniel, Neg. Inst. (4th Ed.) § 517. We cannot disregard well-settled principles of law in an effort to equalize losses between the parties. Such efforts have produced much of the conflict of authority we have on this subject. Mr. Justice Grier, in Brown v. Wiley, supra, remarked, after rejecting parol evidence that would have altered a contract shown by a bill of exchange, that "some precedents to the contrary may be found in some of our states, originating in hard cases; but they are generally overruled by the same tribunals from which they emanated, on experience of the evil consequences flowing from a relaxation of the rule." In what we have said we have had no reference to what would be the rule of evidence in cases of fraud or mutual mistake of facts.

There is another view that is conclusive of the case on the record now before us: The general proposition is true that notice of facts to an agent is constructive notice to the principal when it arises from, or at the time is connected with, the subject of his agency. The rule is based on the presumption that the agent has communicated such facts to the principal. On principles of public policy, the knowledge of the agent is imputed to the principal. But neither the rule nor the reasons for it apply to a transaction in which the agent is acting for himself. When, therefore, the president of a corporation is dealing with it on his own business, his interest is opposed to its interest, and the presumption is that he will not communicate any secret infirmity of the title he is about to convey to the corporation. Both the defendant's answer and the evidence show that Jacques Levy, so far as he was connected with Kauffman's acceptance of the bills, was acting with the view of aiding the firm of Joseph Weill & Co., because of his interest in his nephew, Armand Levy, a member of that firm. He was not acting in the interest of the plaintiff corporation. In assigning the bills to the corporation, he was not acting in his capacity as president of the plaintiff corporation, but individually. Under such circumstances, if it be conceded there were infirmities attending the

acceptance of the bills, and that there was, as between the parties, a failure or partial failure of consideration, he is not presumed to have informed the plaintiff of these facts. Notice of such facts, under the circumstances, to Jacques Levy, although he was president of the plaintiff corporation, was not notice to the corporation. When Jacques Levy was negotiating the notes to the plaintiff corporation, he was acting for himself, and his interest was antagonistic to that of the plaintiff. He was not the plaintiff's agent in that transaction. In making the sale of the bills he stood as a stranger to the corporation; and the plaintiff, therefore, is an innocent holder without notice, even if it be conceded that Jacques Levy had knowledge of facts that would affect the validity of the bills. Mr. Thompson says: "It should be borne constantly in mind that the cases where notice to the president, or any other officer of a corporation, will affect the corporation, are cases where such president or officer is acting exclusively for the corporation." 4 Thomp. Corp. § 4657. Cases applying this principle where a president or director procures the discount of notes by the corporation in which he is an officer are collected by Mr. Thompson in 4 Thomp. Corp. § 5208. This principle was recognized and applied by this court in Bank v. Tompkins, 6 C. C. A. 237, 57 Fed. 20. In that case it was held that "where a bank acquires title to real estate by conveyance from its president, who held the land under a deed reciting full payment of the purchase money, and it has no actual knowledge that the purchase money was not in fact paid, it is an innocent purchaser without notice, and is not chargeable with constructive notice because of the knowledge of its president." See, also, Morawetz, Corp. (2d Ed.) 540c; 4 Thomp. Corp. §§ 4657, 5206, 5208; Barnes v. Gaslight Co., 27 N. J. Eq. 33–37; Bank v. Cunningham, 24 Pick. 270, 35 Am. Dec. 322; Bank v. Lewis, 22 Pick. 31, 32; Koehler v. Dodge (Neb.) 47 N. W. 913, 28 Am. St. Rep. 518; Whelan v. McCreary, 64 Ala. 319; 1 Morse, Banks, 104. The instructions to the jury by the learned judge in the circuit court were in conflict with the views we have expressed, and to the injury of the plaintiff in error, the Levy & Cohn Mule Co.

We find no error in the record on the cross writ of error to the injury of H. Kauffman.

The judgment of the circuit court is reversed, and the cause remanded with instructions to grant a new trial. Reversed.