AMERICAN NAT. BANK OF NASHVILLE, TENN., v. MILLER, Comptroller's Agent.

(Circuit Court of Appeals, Sixth Circuit.   March 16, 1911.)

No. 2,060.

1. TRIAL (§ 177*)—DIRECTION OF VERDICT—MOTION BY BOTH PARTIES.

Request by each party for peremptory instructions in his favor, unaccompanied by request for specific instructions in case the request for directed verdict is denied, is an admission by both parties that the evidence is not in conflict and amounts to a request that the court determine the facts.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.*

Operation and effect of motions by both plaintiff and defendant for direction of verdict, see note to Love v. Scatcherd, 77 C. C. A. 8.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRIAL (§ 178*)—DIRECTION OF VERDICT—MOTION BY BOTH PARTIES.

Where both parties request a directed verdict, and neither requests specific instructions in case the motion is denied, the court in determining the facts is not required to make formal findings of fact.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. § 178.*]

3. BANKS AND BANKING (§ 141*)—CHECKS—PAYMENT—RESCISSION.

Where a check was offered and received by the drawee bank as a deposit, credited to the depositor's account, and charged to the account of the drawer, the transaction constituted complete payment of the check and could not be rescinded except for fraud or mutual mistake.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 347, 348; Dec. Dig. § 141.*]

4. BANKS AND BANKING (§ 142*)—DEPOSITS—SET-OFF—KNOWLEDGE OF PRESIDENT—PERSONAL TRANSACTIONS—KNOWLEDGE OF BANK.

The president of the M. National Bank, being largely indebted to it on account of clearing house balances against a private bank, which he owned, and having a credit in defendant bank amounting to more than $3,000, drew a check on defendant in favor of the M. bank for $3,000, which, with certain other items, was received and accepted toward such clearing house transactions. At the time of executing the check, the president was hopelessly insolvent and knew it, and on the second succeeding day both the private bank and the M. Bank failed. In the meantime the check had been deposited in defendant bank to the credit of the M. Bank, defendant having no knowledge of the president's insolvency or the failure of the banks and the proceeds credited to the M. Bank and charged to the individual account of the president. *Held* that, since the president in settling the clearing house balances against his private bank in part by the check was acting for himself and not in the interest of the M. Bank, the latter was not charged with knowledge of his insolvency and was under no obligation to inform defendant thereof on presenting the check for payment, and hence defendant was not entitled to rescind such payment and credit the president's deposit against indebtedness to it.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 410–413; Dec. Dig. § 142.*

Knowledge or notice acquired by officer or agent of bank in private business or outside scope of duties as affecting its liability, see note to McCalmot v. Lanning, 84 C. C. A. 139.]

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

Action by A. L. Miller, as Comptroller's Agent in charge of the First National Bank of Macon, Ga., against the American National Bank of Nashville, Tenn. Judgment for plaintiff, and defendant brings error. Affirmed.

John M. Gaut, for plaintiff in error.
Sloss Baxter, for defendant in error.

Before SEVERENS and KNAPPEN, Circuit Judges, and DENISON, District Judge.

KNAPPEN, Circuit Judge. The defendant in error (hereafter called the "plaintiff") sued the plaintiff in error (hereafter called the "defendant") for the recovery of a deposit of $3,000 made in the defendant bank by the First National Bank of Macon, Ga., of which bank the plaintiff has been duly appointed agent under the provisions of the national banking act. There was a trial by jury. At the con-

clusion of the testimony counsel for each party asked the court for direction of verdict in favor of such party. The court thereupon proceeded to find the facts and instruct the jury as to their verdict. The facts so found, as supplemented by the "stipulation of agreed facts" presented in open court by counsel for the respective parties, and by the undisputed evidence, are, so far as material for present purposes, substantially these:

On May 14, 1904, R. H. Plant was a large stockholder in, as well as the president and general manager of, the First National Bank of Macon, Ga. (hereafter called the "Macon National Bank"), and controlled the policy and management of that bank. He was at the same time the proprietor of a private bank doing business at Macon under the name of "I. C. Plant's Son's Bank." Of this latter bank one Hurt was cashier and general manager. Hurt was also a director and a member of the finance committee of the Macon National Bank. On the date named Plant was insolvent and knew it. He was at the time indebted to the Macon National Bank in a large amount on account of clearing house balances. The Macon National Bank, as well as Plant individually, kept open deposit accounts with the defendant bank; Plant having on the date named more than $3,000 therein to his individual credit. At the same time he owed the defendant bank $50,000 upon time drafts to his own order, maturing after May 16th, "drawn upon and accepted by R. H. Plant doing a banking business under the name of I. C. Plant's Son's Bank," and indorsed to the defendant for value. On the day named (or the day preceding) Plant drew his check on the defendant bank in favor of the Macon National Bank for $3,000 and delivered the same, through Hurt, to the Macon National Bank, together with certain other financial items, for the purpose of discharging a large indebtedness to the latter bank on account of clearing house transactions. When this check was drawn and delivered, Plant was not at the Macon National Bank, but had been absent therefrom for several weeks on account of his own sickness, although "in frequent if not daily communication with the officers of the bank." The court found that Plant "gave no specific directions in reference to this particular check to the officers of the First National Bank who were conducting his affairs during his sickness"; that it was "a general custom in the (Macon National) bank to accept and discount any paper that he (Plant) might send to them and to credit upon his account any paper that he might send for the purposes of credit; but that paper received for the purpose of credit was generally credited by the bank irrespective of any such custom under the general habit to credit whatever a·man would send for the purpose of credit." The check in question was forwarded by the Macon National Bank to the defendant bank on Saturday, May 14th, for deposit, with instructions to place the same to the credit of the former bank. The defendant bank received the check on Monday morning, May 16th, and pursuant to instructions credited the amount to the Macon National Bank and charged the same to Plant's account, notifying the Macon National Bank of this credit by advice by the night mail of that day. Plant's private bank did not open its doors on the morning of May 16th. A notice of its closing was posted upon its doors, and was

seen by the cashier of the Macon National Bank as early as 9 o'clock. At about 9:30 a. m. the Macon National Bank closed its doors, being insolvent. At about 11:15 a. m. of that day a petition in involuntary bankruptcy was filed against Plant. When the check was forwarded to the defendant bank by the Macon National Bank, the latter's officers who were conducting its affairs had no knowledge of Plant's approaching bankruptcy or even of his insolvency, and no knowledge of his indebtedness to the defendant bank, nor did they have knowledge of such indebtedness at the time the defendant bank credited the check to the Macon National Bank. Whether the actual credit was given the Macon National Bank before or after the filing of the petition in bankruptcy against Plant does not definitely appear either from the findings or stipulation of agreed facts, or the undisputed testimony. The Macon National Bank did not advise the defendant bank by wire or otherwise of Plant's insolvency or of the bankruptcy proceedings against him. On May 25th the defendant bank credited back the $3,-000 check to Plant's individual account, charging the same to the Macon National Bank (then in the hands of a receiver), upon the ground that it had the right to offset Plant's deposit account against the indebtedness upon the accepted drafts. There was due demand for the payment of the deposit to the representative of the Macon National Bank, which demand was refused. The court instructed the jury that Plant's knowledge of his own insolvency and of his debt to the defendant bank was not imputable to the Macon National Bank; that there was no breach of duty on the part of the Macon National Bank in not advising the defendant bank of Plant's insolvency at the time of forwarding the check, nor any breach of duty in not communicating to the defendant bank the fact of Plant's embarrassed condition after the officers of the bank other than Plant learned of it; that the check had been in fact paid by crediting the same to the Macon National Bank; and that the defendant bank had no authority to reverse the entries and withold the amount of the deposit. The jury was accordingly instructed to render verdict for $3,000, with interest from the date suit was brought. There was verdict and judgment accordingly. The defendant excepted to the instruction to find for the plaintiff "in any amount," as well as to the instruction to includ interest in the verdict. A motion for new trial was overruled, and this writ of error is brought to review the judgment.

The defendant insists that the trial judge erred in construing the request of counsel for both parties for a directed verdict as a request that the court find the facts. Setting to one side the question whether the right to raise this question has been reserved by appropriate exception, it is clear that the request by each party for peremptory instruction in its favor, unaccompanied by request for specific instruction in case the request for a directed verdict be denied, amounts to an admission by both parties that the evidence is not in conflict and to a request that the court determine the facts. Beuttell v. Magone, 157 U. S. 154, 157, 15 Sup. Ct. 566, 39 L. Ed. 654; Anderson v. Messenger (Sixth Circuit) 158 Fed. 250, 253, 85 C. C. A. 468. There was in this case no request for specific instruction in case the request for directed verdict was denied. The case is thus distinguished from Minahan v.

Grand Trunk W. Ry. Co. (Sixth Circuit) 138 Fed. 37, 42, 70 C. C. A. 463; Empire State Cattle Co. v. Atchison, etc., Ry. Co., 210 U. S. 1, 8, 28 Sup. Ct. 607, 52 L. Ed. 931; Farmers' & Merchants' Bank v. Maines (C. C. A. Sixth Circuit) 183 Fed. 37, 41. The court was not, however, required, in our opinion, to make formal findings of fact.

We are thus limited on this review to the considerations whether there is substantial evidence sustaining the conclusions reached by the trial court, and whether such conclusions support the verdict, subject, perhaps, to the limitation that the verdict should not stand as against undisputed evidence inconsistent therewith.

Assuming, for the purposes of this opinion, that the defendant bank had the right, as between it and Plant (or one standing in the latter's shoes), upon the discovery of Plant's insolvency to rescind the transaction and so avail itself of the right to set off the deposit in question against Plant's debt to the defendant, it is clear that the Macon National Bank does not necessarily stand in Plant's shoes. The check being genuine, and having been offered as a deposit and received as a deposit, the transaction amounted to a payment of the check to the same extent as if the check had been actually paid in cash to the one presenting it and the cash in turn deposited in the account of the one so collecting the check. The transaction is thus complete, and cannot be rescinded except for fraud or in case of mutual mistake. National Bank v. Burkhart, 100 U. S. 686, 689, 25 L. Ed. 766; Montgomery County v. Cochran (Fifth Circuit) 126 Fed. 456, 460, 62 C. C. A. 70; Riverside Bank v. National Bank (Second Circuit) 74 Fed. 276, 278, 20 C. C. A. 181, and cases there cited. If, therefore, the Circuit Court correctly held that the Macon National Bank was not bound by Plant's knowledge of his own insolvency and his indebtedness to the defendant bank, nor in default for not advising the defendant bank of Plant's embarrassed condition at the time it became known to the officers of the Macon National Bank who were then in personal charge of its affairs, it is evident that the plaintiff was entitled to a direction of verdict in its favor. The doctrine of mutual mistake does not apply. The defendant bank made a mistake, and by it lost the opportunity to exercise the option whether to pay the check, or to refuse it for the purpose of offsetting the deposit account against Plant's notes. Had the Macon National Bank known of Plant's insolvency, as well as his indebtedness to the defendant bank, it does not follow that the former bank would not have taken the check and presented it for payment, discharging Plant's indebtedness to it, to that extent, if and when payment should be made.

Coming to the question whether the Macon National Bank is bound by Plant's knowledge of his insolvency and of his indebtedness to the defendant bank, we may pass by the suggestion that (regardless of this question) the Macon National Bank was derelict in duty in failing to advise the defendant bank of Plant's embarrassed condition. We say this because the representatives of the Macon National Bank who were actively conducting its affairs had no knowledge of Plant's indebtedness to the defendant bank, and thus no occasion to consider the possible question of set-off of Plant's deposit account. We may also pass by the suggestion made by defendant that the Macon Na-

tional Bank was bound by Hurt's alleged knowledge of Plant's indebtedness to the defendant bank. Assuming that Hurt's relations to the Macon National Bank were such as to bind the bank by his knowledge, it is enough to say that it does not clearly appear by the record that Hurt had the knowledge referred to. Such knowledge is sought to be inferred from the fact that he must have known that the drafts which formed the basis of Plant's indebtedness to the defendant bank were outstanding because they were drawn on and accepted by Plant as heretofore stated. But this involves a conclusive presumption that the drafts were entered upon the books of I. C. Plant's Son's Bank. There is no testimony to this effect. On the other hand, it appears that the bookkeeping relating to Plant's personal affairs, including his account with the defendant bank, upon which the check in question was drawn, were kept upon his books at his business office, disconnected with either the private bank or the Macon National Bank. While the fact of the outstanding drafts may have appeared upon the books of the private bank, and so have been known to Hurt, such fact does not expressly appear.

This brings us to the question whether the Macon National Bank was bound by Plant's knowledge of his own insolvency and of his indebtedness to the defendant bank. It is the general rule that the principal is held to know all that his agent knows in any transaction in which the agent acts for him. As said by Judge Taft, speaking for this court in Thomson-Houston Elec. Co. v. Capitol Elec. Co., 65 Fed., at page 343, 12 C. C. A., at page 645:

"This rule is said to be 'based on the principle of law that it is the agent's duty to communicate to his principal the knowledge which he has respecting the subject-matter of negotiation, and the presumption that he will perform that duty.'"

To this general rule there are exceptions, among others, that the agent's knowledge is not that of the principal when the former is engaged in an attempt to defraud the latter. Thomson-Houston Elec. Co. v. Capitol Elec. Co., supra; Niblack v. Cosler (Sixth Circuit) 80 Fed. 596, 600, 26 C. C. A. 16; Yeiser v. United States Board & Paper Co. (Sixth Circuit) 107 Fed. 340, 345, 46 C. C. A. 567, 52 L. R. A. 724. Nor is the agent's knowledge that of the principal when the interest or conduct of the agent is such as to make it certain he would not disclose his knowledge to his principal. Bank of Overton v. Thompson (Eighth Circuit) 118 Fed. 798, 800, 801, 56 C. C. A. 551, and cases there cited. In accordance with this principle, the knowledge of the agent is not imputable to the principal where the agent is acting for himself in his own interest, adversely to his principal, because: First, in such case he would naturally act for himself rather than for his principal; and, second, he would not be likely to communicate to his principal a fact which he is interested in concealing. Union Central Life Ins. Co. v. Robinson (Fifth Circuit) 148 Fed. 358, 360, 78 C. C. A. 268, 8 L. R. A. (N. S.) 883. The interest of one dealing with the principal on his own business is adverse to the interest of the principal, and the presumption in such case is that he will not disclose anything detrimental to his own interest. Levy & Cohn Mule Co. v. Kauffman (Fifth Circuit) 114 Fed. 170, 176, 177, 52 C. C. A.

126. Therefore if the transaction is partly for the benefit of the agent, although the latter is representing, but not exclusively, the principal, there is no presumption that his information derogatory to his own right to transact such business will be communicated to his principal. Louisville Trust Co. v. Louisville, N. A. & C. R. Co. (Sixth Circuit) 75 Fed. 433, 469, 22 C. C. A. 378; Levy & Cohn Mule Co. v. Kauffman, supra; First Nat. Bank v. Tompkins (Fifth Circuit) 57 Fed. 20, 6 C. C. A. 237.

It appears that on May 13th a national bank examiner was in the city of Macon examining another bank, and that on the 14th the examination of the First National Bank of Macon was begun. It is argued from this fact that Plant was acting solely in the interest of the bank in adjusting the clearing house balance referred to. There is no direct evidence that Plant in adjusting this balance was acting in the interest of the bank. On the other hand, it is manifest that he was at least equally interested in protecting himself, and was at least equally acting in his own interest in the transaction in question. He was interested not only as president and a large stockholder in the Macon National Bank, but also as the sole owner of the private bank and as a heavy borrower from the Macon National Bank, being upon paper held by that bank to the amount of over $500,000, nearly all by way of indorsement for various corporations with which he was actively connected and which he financed. All the interests mentioned would naturally be seriously injured by the failure of the Macon National Bank, and were thus all interested in Plant's ability to adjust the large clearing house balance due from Plant's private bank. Over $2,000,000 of claims were proven against Plant's estate, largely on account of his indorsement upon paper of corporations which he represented. These conditions make it practically certain that Plant would not have disclosed to the First National Bank of Macon his own insolvency or the fact that his deposit account in the defendant bank was subject to be set off against a large indebtedness on his part to that bank. There is in this case no room for the application of the rule that the principal receiving the benefit cannot at the same time repudiate the agency, because of the adversary relation here existing and the fact that Plant was not even apparently acting solely in the interest of the bank. We think there is substantial evidence sustaining the findings of fact made by the trial judge, and that the latter support the conclusions of law reached by him, and that the undisputed evidence is not inconsistent with this conclusion. It follows that the Circuit Court did not err in directing a verdict for the plaintiff.

We are not called upon to consider questions of preference between the First National Bank of Macon and Plant's estate, which are subject to be worked out in the course of bankruptcy proceedings.

The objection to the inclusion of interest in the verdict seems to be based upon the fact that the summons claims but $3,000 damages, and that the addition of interest increases the recovery beyond the ad damnum. The commencement of suit was properly treated as a demand for the deposit, and interest runs at least from the commencement of suit, as the time of such demand. Kaufman v. Tredway, 195 U. S. 271, 25 Sup. Ct. 33, 49 L. Ed. 190. Even were the objection techni-

cally good, which we do not decide, there is no merit in it. The declaration claimed interest in addition to the principal sum of $3,000. The exception to the instruction regarding the interest did not point out the reason therefor. Had the court been advised of such reason, it would have been not only proper, but the duty of the court to have permitted then and there an amendment of the ad damnum clause to meet the situation.

We find no prejudicial error in the record, and the judgment of the Circuit Court should, accordingly, be affirmed.